Frances PRUNTY, Appellant,

v.

Bernice C. BLAND, d/b/a Houstonaire Gift Shop, Appellee.

No. 15616.

Court of Civil Appeals of Texas, Houston (1st Dist.).

May 14, 1970.

Rehearing Denied June 11, 1970.

Robert S. Pieratt, Houston, John Musta-chio, Houston, of counsel, for appellant.

Beckmann, Stanard, Wood & Keene, John H. Wood, Jr., San Antonio, Lowell B. Hays, Houston, for appellee.

BELL, Chief Justice.

This is an appeal from a summary judgment granted the appellee, who was the defendant in a suit brought by appellant, appellee's employee, to recover damages for personal injuries received by her when a chair, furnished by the defendant employer, broke causing appellant to fall to the floor.

Appellant was the only employee in a gift shop operated by appellee. Appellee, therefore, carried no workmen's compensation insurance.

Appellant alleged the following acts of negligence on the part of appellee:

1. in failing to furnish plaintiff with a safe place to do her work,

2. in providing defective equipment around which plaintiff was required to work,

3. in failing to keep the equipment around which plaintiff was required to work in a reasonably good state of repair,

4. in providing equipment around which plaintiff had to work, which was not properly inspected, and which, upon reasonable inspection thereof, would have disclosed its defective and dangerous condition,

5. in failing to warn plaintiff of the dangerous and defective condition of said equipment around which she worked,

6. in failing to warn plaintiff of the dangerous and defective condition of the chair which broke and caused plaintiff's injuries.

In her answer, in addition to a general denial, the appellee plead generally that appellant was guilty of contributory negligence; that if the chair was defective, such defect was a latent and hidden one about which appellee could have, and had, no knowledge from usual and customary use and inspection; that if there was a defect, such defect was solely contributable to the manufacturer or distributor; that appellant voluntarily assumed the risk and exposed herself to the usual and customary hazards which she encountered in the performance of her duties, including the use of the chair; and, the fall of plaintiff was the result of an unavoidable accident.

The stool or chair which broke is not described in detail. It is referred to as a bar stool. Faint pictures in the record show the chair to have four legs at the base of what is referred to as a metal post. At the top of the metal post is fastened a seat. It was referred to as a swirl chair. It thus permitted swirling around on the seat while one was sitting on it.

Plaintiff was the only person present when the chair broke and caused her to fall. She injured her hand and arm. The post just below or where the seat was bolted is apparently where the break occurred. The evidence is scant concerning the exact point or nature of the break.

Plaintiff's deposition was introduced. She was the only regular employee working in the gift shop that was located at the Houstonaire Motor Inn. The incident occurred on or about July 27, 1967. Plaintiff was sitting in the chair. She had just made out a sales slip and turned in the chair to the side and it fell with her. The whole seat just fell to the floor with her. The post broke right at the swivel. She had used it for the two years she had worked there. She had had no trouble with it. There was nothing to indicate to

her that the steel column would break off like that. The defendant would also use the chair and would swing around and there was nothing to suggest to plaintiff it would break off like that. Everyone used it. Some who used it weighed as much as 160 pounds. Defendant had never had occasion to warn her that it was dangerous and it should be repaired. At the time the chair broke the defendant was at the beauty parlor. Defendant was called and when she came to the shop defendant said "that old chair, * * * I have been wanting to replace it but I just didn't take the time and now it is too late." She didn't use the word "dangerous". She never had any reason to feel there was reason to look at or watch the chair. She felt it was safe or she wouldn't have used it. The chair was welded together by the maintenance man. She was told it was safe after it was welded and she used it.

The defendant in her deposition stated the stool was apparently in good condition. She had the engineer adjust it occasionally. She had it adjusted as to height. He was always careful in putting the bolt back in securely. She occasionally examined the stool. She was not aware it was unsafe. She thought it was improperly used and that was the reason it broke. Plaintiff had a habit of leaning back on two legs of the stool and that is what caused it to break. The engineer took it to a welder to weld it. The engineer who took it was Pete Fitzhugh. The stool was later used for awhile, but the defendant later bought a new one. The one that broke had been used about two years.

On the matter of inspections made by the defendant employer, the evidence reflecting reasonable inspection is very inconclusive. When asked if she made regular routine check of the equipment as to its safety for the employees, defendant answered she did but that there wasn't much in a gift shop requiring inspection. She did, however, make inspections. She stated she could not answer how long before the accident an inspection had been made. When asked in what way the chair would be inspected, she stated, "That is pretty hard to answer." When asked if she looked at the chair to see if it was all right for whoever might be employed there, she said, "Well, I suppose that I did." She stated she looked at it occasionally and quite often she had the engineer tighten the screws and they kept it up quite well. She could not tell the day the engineer did this. She had warned plaintiff about leaning back on the stool. She stated in effect that her statement about the chair being old referred to its unsightliness and not its being defective. She denied she said it was now too late to get rid of it.

In an affidavit in support of her motion, defendant added nothing to her deposition. In fact, the affidavit, apart from the identification of pictures of the chair, contained pure conclusions and expressions of opinion.

There is no word from Mr. Fitzhugh, the maintenance engineer who took the chair to the welder. The appellee stated he was no longer in Houston and she did not know where he was.

The defendant also furnished an affidavit from a Mr. Walker, a practical engineer at Houstonaire Motor Inn. The affidavit is dated October 30, 1969. He had been at the Houstonaire since "last year." This would mean he was not there when the chair broke and presumptively not familiar with it until after it had been welded and put back in use. He stated he had on numerous occasions inspected the stool or chair, photographs of which were attached to appellee's affidavit. It was his very positive opinion that repeated hourly, daily, weekly or monthly inspections will at no time ever show defects in the metal column that allegedly broke and was later welded. At some unspecified time after the chair was welded he saw it and "apparently" at the time he saw it and made the affidavit it showed no sign of weakness or defects in the position where it broke. He

then stated if it was weak or defective a visual inspection or inspection by touch would not show the defect. He stated a defect could be detected only by extensive metallurgical tests.

We hold the trial court was in error in granting appellee's motion for summary judgment.

The Supreme Court of Texas, in the recent case of Gibbs et al v. General Motors Corporation, Tex., 450 S.W.2d 827, stated clearly the test to be applied in determining whether summary judgment should be granted. It stated the rule as follows:

"In such cases, the question on appeal, as well as in the trial court, is *not* whether the summary judgment proof *raises fact issues* with reference to the essential elements of a plaintiff's claim or cause of action, but is whether the summary judgment proof *establishes as a matter of law that there is no genuine issue of fact* as to one or more of the essential elements of the plaintiff's cause of action.

* * * * * *

"The provisions of Rule 166-A are applicable alike to defendants and plaintiffs who move for summary judgment; the judgment sought should be granted, and if granted should be affirmed, *only* if the summary judgment record establishes a right thereto as a matter of law."

We have above stated rather fully what the summary judgment record shows. An analysis of it convinces us that it does not establish as a matter of law that appellee was entitled to prevail.

■ Appellant was a servant and appellee was her master. In such cases the master owes the servant the duty to fur-nish her a safe place to work and safe equipment with which to work. Peck v. Peck, 99 Tex. 10, 87 S.W. 248 (Tex.S.Ct.). While the master is not an insurer, she is under a duty to use the ordinary care of a reasonably prudent person in furnishing safe equipment, and the same duty to make inspections to see that the equipment does not become defective. The servant is under no duty to inspect the equipment unless inspection is a part of the work he is employed to perform.

■ The record before us does not show as a matter of law that the chair was not defective.

The evidence does not show as a matter of law that appellee made the inspections for defects that the law requires of her. In fact, her testimony in this respect is equivocal and uncertain.

Of course, the master is not liable for injuries resulting from latent defects. However, in the case before us the testimony that the defect was latent is all opinion evidence. This does not suffice to establish the fact as a matter of law. Gibbs et al v. General Motors Corporation, supra, and authorities there cited.

The defense of contributory negligence is not shown as a matter of law, as the above testimony will reflect.

The evidence fails to establish as a matter of law that appellant assumed the risk of injury from any defect. There is nothing to show she knew of any defect and nevertheless used the equipment. In a case of master and servant relationship the servant will not be held to have assumed a risk of which she had no knowledge. Peck v. Peck, supra; Wood v. Kane Boiler Works, 150 Tex. 191, 238 S.W.2d 172 (Tex.S.Ct.).

Reversed and remanded.