J. WEINGARTEN, INC., Appellant,

v.

Rachel SANDEFER, Appellee.

No. 7442.

Court of Civil Appeals of Texas, Beaumont.

Feb. 15, 1973.

Orgain, Bell & Tucker, Beaumont, for appellant.

Seale & Stover, Jasper, for appellee.

KEITH, Justice.

Although subject to the Workmen's Compensation Laws, defendant was not a

subscriber and did not carry Workmen's Compensation Insurance. Plaintiff sustained injuries in the course of her employment with defendant and brought suit to recover her damages, alleging negligence on the part of the defendant which proximately caused her injury. § 1, Art. 8306, Vernon's Ann.Civ.St. Based upon the jury verdict, the trial court rendered judgment for plaintiff and this appeal follows.

Defendant operated a supermarket and plaintiff was employed as a clerk in the non-food department thereof. She had been so employed for approximately three years before the date of her injury. One of her duties was to stock the shelves of her department with merchandise which she would procure from the storage area. On the occasion in question she was engaged in restocking display shelves with drinking glasses and had two of the glasses for which there was no room on the display shelves. There was an area below the bottom shelf known as an "understocking" area where such surplus merchandise was kept until needed upon the display shelves. Plaintiff said: "I just squat down to put them [the two glasses] under the counter [when] . . . My knee popped." She says that she made a complete knee bend in her effort to place the glasses in the storage area and that she knew of no other way in which such could be accomplished.

Upon cross-examination, Mrs. Sandefer testified that she was "a strong, able bodied" female for a person of her age, 42 years; that she had done this particular type of work for about three years before her injury, was familiar with the routine of the job; that she had been stooping, bending, had done some lifting, and some squatting in the course of her work for the defendant—just as she had done in connection with her housework. She testified that when her knee popped, "it was a surprise"; that she was squatting like she had

done a number of times. She had never hurt herself before in doing such work. The reason for placing the surplus glasses under the counter was to enable her to restock the shelves without going back to the supply room.

The employer had given her no instructions as to the manner in which she was to bend, stoop, or squat in doing her work and that she could do it the way she felt like doing it.

Other than stipulations of the parties and the introduction of a medical report by agreement, no other witnesses were offered and the defendant rested with plaintiff. We now summarize the several issues upon which the judgment was based:

No. 1. Defendant failed "to furnish employees to handle the stocking of the merchandise which was to be sold by the plaintiff," which was negligence proximately causing her injury.

No. 4. Defendant "required stock to be 'understocked' in shelves beneath the sales shelves, rather than having employees bring the stock from the stock room as the shelves were emptied of a particular item," which was negligence proximately causing her injury.

No. 7. Defendant "required stock to be 'understocked' in shelves which were so close to the floor as to constitute a dangerous condition when the plaintiff was forced to squat down to place stock in such shelves," which was negligence and a proximate cause of her injury.

No. 10. Defendant "failed to furnish a sufficient number of shelves so that the merchandise could be stocked and displayed at a reasonable height from the floor," which was found to be a proximate cause of her injury.*

In replying to defendant's contentions that the trial court erred in overruling its

---

* Reasonable height was defined to mean "the height at which a reasonably prudent employer, in the exercise of ordinary care under the same or similar circumstances, would have stocked and displayed the merchandise."

motion for peremptory instruction, plaintiff advances several propositions of law which we accept at the outset of our discussion in order to put the case in proper perspective:

■ 1. The employer had a continuing nondelegable duty to provide and maintain a reasonably safe place for plaintiff to work. Leadon v. Kimbrough Brothers Lumber Company, 484 S.W.2d 567, 568 (Tex.1972), is probably the latest authoritative case so holding.

■ 2. The employer has a duty to furnish the employee with safe and suitable appliances so that he may carry on the work with reasonable safety; but, the master is not an insurer. Peck v. Peck, 99 Tex. 10, 87 S.W. 248 (1905); Fort Worth Elevators Co. v. Russell, 123 Tex. 128, 70 S.W.2d 397, 401 (Tex.1934); Prunty v. Bland, 454 S.W.2d 881, 884 (Tex.Civ.App., Houston—1st Dist., 1970, error ref. n. r. e.).

■ 3. The employer had the duty to exercise ordinary care to select careful and competent fellow servants or coemployees. Fort Worth Elevators Case, supra; Western Union Telegraph Co. v. Coker, 146 Tex. 190, 204 S.W.2d 977, 978 (1947); Holiday Lodge Nursing Home, Inc. v. Huffman, 430 S.W.2d 826, 828 (Tex.Civ.App., Texarkana, 1968, no writ).

■ 4. And, the employer had the duty to establish and enforce safety rules in order that the employee may perform assigned duties with reasonable safety. Fort Worth Elevators Case, supra; J. Weingarten, Inc. v. Moore, 449 S.W.2d 452, 453 (Tex.1970).

■ Each of the rules so stated is soundly entrenched in our jurisprudence and we accept each without hesitation. And, we would be remiss, in view of our disposition of this case, not to point out at this time that in considering the no evidence points of the defendant we do so under the rule announced in Garza v. Alviar,

395 S.W.2d 821, 823 (Tex.1965). Thus we consider only the evidence and the inferences tending to support the findings and disregard all evidence and inferences to the contrary.

■ The defendant, as a nonsubscriber, was deprived of certain defenses in this action; but, it was still necessary for the plaintiff, if she was to recover, to prove actionable negligence on the part of the defendant which proximately caused her injuries. Western Union Telegraph Co. v. Coker, supra (204 S.W.2d at 978); Najera v. Great Atlantic & Pacific Tea Co., 146 Tex. 367, 207 S.W.2d 365, 366 (1948). Or, as was said in Coleman v. Hudson Gas and Oil Corporation, 455 S.W.2d 701, 702 (Tex.1970), "Any plaintiff must prove the existence and violation of a legal duty owed to him by the defendant in order to establish tort liability."

Judge Critz restated several of the hornbook definitions of negligence, applicable in the case of nonsubscribers such as we have here, in the case of Great Atlantic & Pacific Tea Co. v. Evans, 142 Tex. 1, 175 S.W.2d 249, 251 (1943). Evans, "a strong, robust young man," was not allowed to recover for the hernia he sustained while carrying sacks of potatoes. "He was merely required to perform work that he had been doing for this same employer for several months before this occasion." Thus, the record did not support a finding of actionable negligence and, "the facts of this record fail, as a matter of law, to show that A. & P. ought to have foreseen that Evans would be injured by doing the character of work required of him in this instance." (175 S.W.2d at 251)

The late Judge Hutcheson quoted liberally from *Evans* and *Coker* in the well-reasoned case of Sears, Roebuck & Company v. Talley, (5th Cir., 1956), 239 F.2d 82, 84–85, where an experienced employee was denied a recovery for a knee injury sustained while carrying a freezer. This was followed in Collins v. Singer Sewing Machine Company, (5th Cir., 1957), 239

F.2d 705, 706, where a mature and experienced employee strained his back while carrying a sewing machine up steep stairs and was denied a recovery.

Plaintiff has not brought forward any evidence upon which the jury's answers to the first negligence issue can be based. With two drinking glasses in her hand and the task being to place them on a shelf near the floor, it is, indeed, difficult to perceive any reason why the employer owed a duty to her to furnish other additional employees to "handle the stocking of the merchandise." Mrs. Sandefer was hired to do just that and had been doing it without difficulty or complaint for several years. She knew the requirements of her job and her own strength as well as anyone, including the employer. She did not perceive of any reason to call for assistance and is hard put to show that her employer should have seen the necessity for assistance in this case.

Granted that the employer had directed that the surplus glasses be placed in the low area, such gives no rise to a claim of negligence. In Gulf, Colorado & Santa Fe Ry. Co. v. Waterhouse, 223 S.W.2d 654, 659 (Tex.Civ.App., Beaumont, 1949, error ref. n. r. e.), the court said:

"Doubtless many orders by the master expose the servant to *some* risk of harm; but whether the master is negligent in ordering his servant to perform a task depends upon whether he ought to realize that the order exposes the servant to an *unreasonable* risk of harm." (emphasis in the original)

Although we have searched diligently, we can find no evidence in our record which supports the first cluster of issues. If she could not foresee the possibility of injury—and she was surprised when injury occurred—it cannot be said that there is any reasonable inference that the employer should have foreseen that she would hurt herself. Armstrong v. Missouri–Kansas–Texas–R. Co. of Texas,

233 S.W.2d 942, 946 (Tex.Civ.App., Dallas, 1950, error ref. n. r. e., cert. den. 342 U.S. 837, 72 S.Ct. 62, 96 L.Ed. 633; Shumake v. Great Atlantic & Pacific Tea Co., 255 S. W.2d 949, 951 (Tex.Civ.App., Dallas, 1953, error ref. n. r. e.); Masso v. Stansbury, 399 S.W.2d 396, 399 (Tex.Civ.App., Amarillo, 1966, error ref. n. r. e.), which quotes liberally from *Evans*, supra.

In Western Union Telegraph Co. v. Coker, supra, the Court quoted from Labatt's Master and Servant, 2d Ed., Vol. 3, pp. 2912–2915, § 1107:

" 'So far as the movements of servants may depend upon their own volition, and are not in any way affected by the control of a superior, it is clear that there can be no recovery on the theory that the number of servants was temporarily inadequate at the time and place where the injury was received, unless it is shown that such inadequacy was known, actually or constructively, to the master or his representative.' " (204 S.W.2d at 978, 979)

Far from showing any such knowledge, plaintiff can point to no evidence in this record which would show that any reasonable person, including herself, who even dreamed that other or additional employees were required to assist her or, for that matter, what sex, age, and physical characteristics would be required of such assistants. The same rule negates a finding of proximate cause. Shumake v. Great Atlantic & Pacific Tea Co., supra, 255 S.W.2d at 951.

When we turn to a consideration of the other series of issues, we find no evidence, by custom or otherwise, which would lead to an inference of negligence on the part of the storekeeper in arranging shelves all the way to the floor. Plaintiff made no effort to prove custom and usage as was done in Leadon v. Kimbrough Brothers Lumber Company, supra, 484 S. W.2d at 569, nor was there a shred of evidence upon which the jury could have based their answers to the last three clusters of issues which we have summarized.

**946**

Plaintiff does, however, point to her testimony elicited in response to leading questions, that defendant has altered its procedure so that "there are no shelves under the display shelves" and "[t]here is no understock of the shelves" so that items which will not go on the display shelves must now be returned to the store room. Such testimony is generally considered to be inadmissible if offered for the purpose of showing negligence. Roosth & Genecov Production Co. v. White, 152 Tex. 619, 262 S.W.2d 99, 104 (1953); 2 McCormick & Ray, Texas Law of Evidence (2d Ed), § 1151, p. 42 (1956); L. Temple, "Admissibility of Evidence of Subsequent Safety Measures," 37 Tex.L.Rev. 478 (1959).

This testimony, received without objection, does not alter our view of the case. There being no evidence tending to show that the conditions existing at the time of the accident were either negligently constructed, maintained, or used, the evidence of a change did not turn a non-negligent condition into one of actionable negligence. For aught that appears, defendant may have simply rearranged the store as a housewife frequently rearranges her furniture. Neither method of doing business shows any failure to exercise ordinary care.

We repeat, after a careful review of this record, we find no evidence of actionable negligence on the part of the defendant which proximately caused injury to the plaintiff. Mrs. Sandefer did no more on the occasion in question than she had done theretofore many times without mishap; there is no evidence that the work required of her was dangerous or that her employer should have anticipated any injury from the task assigned. There is not in this case even the "glimmer of evidence to support the plaintiff's position." Seideneck v. Cal Bayreuther Associates, 451 S.W.2d 752, 755 (Tex.1970). Thus, the case falls within the rule announced in Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059 (1898), to the effect that when the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, such evidence is in legal effect no evidence, and it will not support a verdict or judgment.

We sustain defendant's points 2, 5, 7, 9, 11, 13, 15, 17, 19, 21, and 23. This action renders it unnecessary that we consider the remaining points brought forward by defendant.

The judgment of the trial court is now reversed and judgment rendered for defendant.