# THE GREAT ATLANTIC & PACIFIC TEA COMPANY V. ROYCE O. EVANS.

No. 8115. Decided October 27, 1943.
Rehearing overruled December 8, 1943.
(175 S. W., 2d Series, 249.)

*Touchstone, Wight, Gormley & Touchstone,* of Dallas, for petitioner.

As the work in which respondent was engaged was not inherently dangerous, when the jury found that it was not unusual to supply help or truck to assist such employee to remove a few sacks of potatoes, one at a time, from the sidewalk to the interior of a small store, petitioner (defendant below), as a matter of due process, was clearly entitled to the judgment of non obstante veredicto duly besought. Doty v. Fort Worth & D. C. Ry. Co., 127 Texas 521, 95 S. W. (2d) 104; Joske v. Irvine, 91 Texas 574, 44 S. W. 1059.

*John W. West* and *Wm. H. Hall,* both of Dallas, for respondent.

MR. JUSTICE CRITZ delivered the opinion of the Court.

This suit was instituted in the District Court of Dallas County, Texas, by Royce O. Evans against The Great Atlantic & Pacific Tea Company, hereinafter called A. & P., to recover damages for a personal injury alleged to have been received by Evans as the result of the negligence of defendant. Trial in the district court resulted in a verdict and judgment for Evans in the sum of $975.00. This judgment was affirmed by the El Paso Court of Civil Appeals, to which the case was transferred by this Court. This Court granted a writ of error on the application of A. & P.

By his petition in the district court, Evans alleged that on or about June 29, 1939, he sustained a personal injury in the form of a hernia; that such injury was received while in the discharge of his duties as an employee of A. & P.; that such injury was caused by lifting and carrying sacks of potatoes, weighing about 100 pounds each, from the sidewalk in front of A. & P.'s store to the rear thereof, a distance of about 75 or 80 feet; that A. & P. was guilty of negligence, which proximately caused his injury, by requiring him to carry these 100-pound sacks of potatoes the distance above mentioned without someone to assist him, or without furnishing him a truck or some other mechanical means on which to haul them.

Evans testified: That at the time he was injured he was a young man, about 21 or 22 years of age; that at such time he weighed about 150 or 155 pounds; that he was then strong and robust and in good health; that such was his physical appearance; that he was employed by A. & P. as a stock boy and assistant manager; that his usual duties required him to move produce from the sidewalk in front of the store to the interior thereof, sometimes a distance of 75 or 80 feet; that he was injured by moving some sacks of potatoes which weighed about 100 pounds; that such injury was a hernia; that in moving such potatoes he lifted and carried them the distance indicated; that he had been doing the same character of work for several months before his injury without making any complaint, and without suffering any harm by so doing; that in his experience as an employee of A. & P. and other grocery stores he had seen other employees handle sacks of potatoes just as he handled these sacks of potatoes; that some stores had trucks, and others did not; that this store had no truck, and he knew that fact; that he had worked in stores that had trucks, and in stores that did not, and that it was usual for grocery store employees to handle 100-pound sacks of potatoes in the way and manner he handled these sacks.

Evans further testified: That at first he asked the store manager to help him move these sacks of potatoes; that the manager complied with such request and assisted him in moving some of the sacks; that before all of the potatoes were moved the manager was called to wait on a customer; that the manager told him to finish moving these potatoes; that he knew it was his duty to move them; that he had moved sacks of potatoes like these many times before, and had never before asked the manager to help him; that this was the only time he had asked for help; that he had worked in several grocery stores, and in all of them he had seen clerks and managers indiscriminately carry sacks of potatoes the weight of these; and that it was the usual and customary thing for grocery store clerks and employees to do this character of work.

On direct examination Evans testified that he requested the manager to allow him to borrow a truck from a near-by grocery store to use in moving these potatoes, and that such request was refused. On cross-examination Evans explained this matter by saying that he told the manager that he knew where he could borrow a truck from a near-by grocery store, and the manager said it was against the rules of the Company to borrow from other stores.

We have carefully examined the record in this case, and, so far as we are able to discover, the above is a fair statement of all the evidence contained therein touching the issue of negligence.

At the close of the evidence, A. & P. filed and presented a motion for an instructed verdict in its favor. Also, after the verdict was returned, A. & P. duly filed and presented a motion for judgment in its favor non obstante veredicto. Both motions were overruled.

■ As generally defined by our courts, the term "negligence" means the doing of that which a person of ordinary prudence would not have done under the same or similar circumstances, or the failure to do that which a person of ordinary prudence would have done under the same or similar circumstances. 30 Tex. Jur., pp. 647-8.

The standard to test the question of negligence vel non is the common experience of mankind, and implies generally the want of that care and diligence which ordinarily prudent men would use to prevent injury under the circumstances of the particular case. Southern Cotton Press & Mfg. Co. v. Bradley, 52 Texas ·587; International & G. N. Ry. Co. v. Gray, 65 Texas 39.

■ The question of the existence of negligence and its degree generally depend upon the facts of each case; and if it consists of an omission to perform a duty devolved upon the person charged with negligence, it must be considered with reference to the character of the business in which the person is engaged. San Antonio St. Ry. Co. v. Gaillonette, 79 Texas 341, 15 S. W. 390.

■ Negligence rests primarily upon two elements: (a) reason to anticipate injury, and (b) failure to perform the duty arising on account of that anticipation. Collins v. Pecos & Northern Texas Ry. Co., 110 Texas 577, 212 S. W. 477, 222 S. W. 156; Johnson v. Wichita Valley R. R. Co., 104 S. W. (2d) 128.

Although injury may result from a person's act or omission, yet, if the actor could not have reasonably foreseen the resultant injury, or injuries similar in character, he is not to be held responsible therefor. 30 Tex. Jur., p. 663, and authorities there cited; Texas & Pacific Ry. Co. v. Bigham, 90 Texas 223, 38 S. W. 162; Union Stock Yards v. Peeler (Com. App.), 37 S. W. (2d) 126.

■ Measured by the above rules of law, we are convinced that the facts of this record fail, as a matter of law, to convict A. & P. of actionable negligence. Evans was a strong, robust young man. He was merely required to perform work that he had been doing for this same employer for several months before this occasion. He was doing the same character of work that other employees in other grocery stores constantly and generally did. He was doing the same character of work that he constantly and generally did in other grocery stores where he had been employed prior to his employment by A. & P. Certainly such a record cannot support a finding of actionable negligence. Certainly Evans cannot complain if A. & P. merely required him to do the usual and customary work required of persons in his line of employment, or, stated in another way, required by the character of the business in which he was employed. Finally, we think that the facts of this record fail, as a matter of law, to show that A. & P. ought to have foreseen that Evans would be injured by doing the character of work required of him in this instance.

As we view this record, the facts of this case are fully developed, and no good purpose can be served by remanding it for a new trial. It is therefore ordered that the judgments of the district court and Court of Civil Appeals be both reversed, and that judgment be here rendered for A. & P.

Opinion delivered October 27, 1943.

Rehearing overruled December 8, 1943.