**M. R. TRIPP, Appellant,**

v.

**WEST TEXAS UTILITIES COMPANY,**
**Appellee.**

No. 6140.

Court of Civil Appeals of Texas,
El Paso.

Dec. 9, 1970.

Rehearing Denied Dec. 30, 1970.

Charles M. Prock, Fort Stockton, for appellant.

Wagstaff, Alvis, Alvis & Leonard, George W. Leonard, Jr., David G. Stubbeman, Abilene, for appellee.

## OPINION

FRASER, Chief Justice.

As stated by the appellant, this is a suit for damages done to plaintiff-appellant's farmhouse in Pecos County, Texas. At the close of the evidence, the district court granted defendant's motion for instructed verdict. Plaintiff appeals.

It appears from the record that plaintiff owned a small house in Pecos County, Texas. He ordered a new evaporative air conditioner to be installed on the home by the defendant. The deal was made and defendant did sell to appellant and install an air conditioner on appellant's house in the summer of 1966. After such installation plaintiff alleges in his petition that the roof began to leak within a month after the installation, and upon the occurrence of a big rain about a month after the installation, the house was flooded and damaged by leakage from the roof, the damage extending to and throughout the entire house excepting one bedroom.

This being a case wherein the court granted an instructed verdict, we have followed the rules laid down in McDonald's Texas Civil Practice, Vol. 3, p. 235, wherein it is set out that after an instructed verdict, the reviewing court must give full faith to every bit of evidence produced in his favor by the plaintiff-appellant and must indulge all reasonable inferences in favor of appellant, must disregard conflicts in testimony, and find that there is no evidence to support the submission of an issue to the jury. 3B Tex.Jur. § 908, p. 364; Schad v. Williams, 398 S.W.2d 603 (Tex. Civ.App., 1965, err.ref. n.r.e.). We believe this to be true even though plaintiff has based his case on negligence by the defendant-appellee.

Appellant's wife, Mrs. M. R. Tripp, testified that appellant was sick in bed the day they installed the air conditioner, and she was sitting in the bedroom with him with the exception of going out in the yard once or twice and looking up at the roof. No one representing the appellant, apparently, went up on the roof while, or after, the new air conditioner was installed. Mrs. Tripp testified that there were apparently three men installing the air conditioner. She further testified that the roof was bent and that the ridge line of the roof was ruined after the installation of the air conditioner. She testified that on several occasions she heard someone on the roof

call to someone on the ground to throw him up a wrench or tool of some kind, and that when this was done it made quite a noise. She further testified that one of the employees of appellee said they had dropped the air conditioner. Her comment was that she didn't have to be told that. She further testified that the roof had never leaked before this installation, but had leaked ever since. It is also in the record that the roof has not yet been repaired. Mrs. Tripp further testified that they had just put in some new white cedar paneling and that such paneling, along with a lot of other things, was completely ruined and stained by the big rain which occurred approximately a month after the installation of the air conditioner. Mrs. Tripp also testified that she notified a Mr. Dawkins, the district manager for appellee, and he finally did come out and inspect the situation; that his visit was between the first of one or two little rains when the roof had leaked, and before the big rain. She testified, in other words, that after the air conditioner was installed and within a month's time, they had two light, misty rains and that the roof leaked both times, and these occurrences caused her to notify Mr. Dawkins who, as stated above, made his inspection before the big rain that appellant claims damaged the interior of the house with the exception of one bedroom. Mr. Dawkins brought a carpenter or roof man with him, but Mrs. Tripp refused the offer to fix the roof because the man said he could not guarantee that the roof wouldn't leak again.

Now, taking into consideration that this is an instructed verdict case, we must consider as true all of the testimony favorable to plaintiff-appellant and indulge in all reasonable inferences to be taken therefrom, and reject inferences and testimony or evidence to the contrary. Therefore, we cannot take into consideration the denial of the wrench and tool-throwing incident, the dropping of the air conditioner incident, and any other claims put forth by appellee contrary to appellant's position.

Summing up, it seems a fairly probable inference that the dropping of the air conditioner, or the throwing up of the wrenches, or the bending of the roof, or any of them, could have caused a hole or aperture in the roof, permitting rain-water to flood through and cause the damage claimed by appellant.

With these facts in mind, we do not feel that the trial court was justified in granting the directed verdict that it did. It certainly could be inferred that if the air conditioner, which was described as a very large one, was dropped on the roof (which was described as a corrugated iron roof with no shiplap or other support under it except in one small room which was an addition to the house and not directly under the air conditioner), it could easily have damaged the roof or made holes or rents therein. It can be inferred, too, that the throwing of wrenches from the ground up on the corrugated iron roof could well make holes through which rain-water could run.

It was true that plaintiff did not go out to inspect the work that was done on the roof during the work, as he was sick in bed, nor did any employee of his, or his wife, go on the roof while the work was being done; but, as stated above, we must take it as true that the incidents heretofore mentioned, such as dropping of the heavy air conditioner and throwing up on the roof of the wrenches and/or tools, happened, and could have caused damages sufficient to cause the alleged leakage.

For these reasons it is our holding and belief that the judgment of the trial court should be, and is, reversed and the cause is remanded.

PRESLAR, Justice (dissenting).

I respectfully dissent from the holding of the majority and would affirm the judgment of the trial court.

This is a common law negligence action for damage to property. Under Texas law, negligence is generally defined as the failure to exercise ordinary care. Great Atlantic & Pacific Tea Co. v. Evans, 142

Tex. 1, 175 S.W.2d 249. A foreseeable risk must exist before an act or omission can be deemed a breach of ordinary care. If injury could not have been foreseen as a consequence of an act or omission, that conduct is not negligent. Kaufman v. Miller, 414 S.W.2d 164 (Tex.1967). The bare elements of recovery in a case of this type require that the plaintiff prove that the defendant owed a legal duty to plaintiff which it violated, and that plaintiff suffered injury which was proximately caused by such violation. The basis of this dissent is that no such specific act or omission with its attendant foreseeability and resulting injury proof are present in the record before us. Appellant points out none specifically, and the opinion of the majority generalizes and sets out no specific issue to be resolved by a jury. In fact, the single point of error of the appellant is too broad to meet the rules of good briefing and merit consideration, for it simply states that the court erred in granting the motion for directed verdict. However, appellee does not contest the violation of the rules of briefing. The best possible point the majority is able to point to, is that the roof did not leak before the installation and did leak after such installation. Some element of res ipsa loquitur is thus presented, but other elements of that doctrine are not present, and more important, res ipsa loquitur was not pleaded.

I would affirm the judgment of the trial court.