CENTRAL FREIGHT LINES, INC.,
Appellant,

v.

Ray Anthony BERGERON, Sr., et al.,
Appellees.

No. 7252.

Court of Civil Appeals of Texas,
Beaumont.

July 29, 1971.

Rehearing Denied Aug. 26, 1971.

Benckenstein & Norvell, Beaumont, for appellant.

John L. Fulbright, Beaumont, for appellees.

KEITH, Justice.

We review a judgment arising out of a car-truck collision wherein the minor plaintiff, a passenger in the car, recovered damages for personal injuries. The jury convicted defendant's driver of a single act of negligence—driving at an excessive rate of speed—which proximately caused the accident; and, although it found that the driver of the automobile failed to keep a proper lookout, refused to find that such failure was the sole proximate cause of the accident. The jury also found that the truck driver was acting in a sudden emergency, acted prudently when confronted thereby, but that the sudden emergency was not the sole proximate cause of the accident.[1]

The jury returned negative answers and thereby refused to find that the truck driver: (a) failed to slacken the speed of his vehicle immediately prior to the collision; (b) failed to keep a proper lookout; (c) failed to make a proper application of his brakes; and (d) sound the horn on the truck. The jury also found that the truck driver failed to turn to the right or to the left immediately prior to the collision but refused to find that such failure, in each instance, was negligence.

The question of Mouton's stopping prior to entering the intersection was submitted both positively and negatively and was answered consistently—the jury refused to find that he failed to stop before entering the intersection and found that he did stop prior to entering the intersection.

Defendant's motion for judgment non obstante veredicto having been overruled, judgment followed the verdict. From the order overruling its amended motion for new trial, defendant brings this appeal.

■ By appropriate points, defendant challenges the findings of negligence and

---

1. The case was tried before the change in procedure announced by the Supreme Court in Yarborough v. Berner, 467 S.W. 2d 188 (Tex.Sup.1971). In view of our disposition of the case, we do not reach the interesting questions discussed in the post-submission briefs of the parties relating to the applicability of the doctrine of Yarborough v. Berner to a case tried before its announcement.

proximate cause upon which the judgment rests. These points complain that there was "no evidence", and "insufficient evidence" to support such findings, and a further complaint is made that the answers are contrary to the great weight and overwhelming preponderance of the evidence. Each of the points which we will consider is founded upon an appropriate assignment in defendant's amended motion for new trial.[2] In our consideration of the no evidence point, we consider only the evidence in support of the finding of the jury, while as to the latter two challenging the "sufficiency" of the evidence, we consider the record as a whole.

Plaintiff was a passenger, "sitting shot gun in the front seat", of a car driven by Russell Mouton, when it was struck by a truck-tractor owned by defendant and operated by Kenneth Myers, an agent in the course of his employment with the defendant. The accident occurred at the intersection of Highway 73 and Thirty-second Street in the City of Groves. The highway consists of two widely separated roadways, each having three lanes, and Myers was in the center lane. Thirty-second Street, at the point of the collision, is a two-lane paved city street and there was a stop sign as well as a red blinking light requiring traffic thereon to stop before entering Highway 73. The blinking light also warned by a yellow or caution signal, traffic on the highway approaching the intersection. Myers was traveling upon a "through highway" as defined in Art. 6701d, § 13(f), Vernon's Ann.Civ.St.

The accident occurred during the early afternoon of August 12, 1966, at a time when the sun was shining, the visibility was good, the roadway dry, and with only normal traffic in the area. Mouton, then fifteen years of age, was accompanied by the plaintiff, then fourteen years of age,

and another teen-aged boy. Of these occupants, only the minor plaintiff appeared at the trial and we have no explanation of the absence of the other two persons in the Mouton vehicle.

Plaintiff testified that as they came to the highway intersection, Mouton stopped his vehicle and then proceeded into the intersection. He said that he first saw the truck while they were stopped; it was "coming fast", although he was unable to estimate its speed. Plaintiff did not continue looking in the direction from which the truck was approaching; but, as Mouton "eased out into the intersection", he turned around "and looked again and there was that truck right there." The next thing he remembers was "[w]aking up in the hospital." Upon cross-examination, plaintiff repeated his prior testimony that he did not know the rate of speed of the truck, but did remember telling Mouton "Watch out, Russell," and that he hollered at him "because the truck was on us." He felt no application of the brakes on their car.

Plaintiff called Groves City Policeman Block, who investigated the accident, and established that the posted speed limit on Highway 73 at the place of the accident was fifty miles per hour and that the truck laid down forty-seven feet of skid marks. On cross-examination, Block said the accident happened in the center of the three lanes upon Highway 73 and that the Mouton vehicle left no evidence of skid marks on the pavement.

Defendant presented C. J. Findley, an attendant at a filling station situated at the intersection, who said that he saw the accident. Findley said that Mouton did not stop, he just "hesitated" before entering the intersection. He said that the truck driver, whose speed he estimated at forty-

2. We overrule plaintiff's challenge to the sufficiency of the points which we have under consideration. Fambrough v. Wagley, 140 Tex. 577, 169 S.W.2d 478, 482 (1943); Wagner v. Foster, 161 Tex. 333,

341 S.W.2d 887, 890 (1960); City of San Antonio v. Guido Bros. Construction Co., 460 S.W.2d 155, 158 (Tex.Civ.App., Beaumont, 1970, error ref. n. r. e.).

five miles per hour, blew his horn, locked his brakes, and tried to jump the esplanade to avoid hitting the Mouton vehicle. Findley was permitted to say that the truck speed was "normal" when he first saw it some seventy-five yards away from the point of impact. He said that the horn sounded when the truck was some fifty-five to sixty feet from the point of collision and that the brakes came on about that time.

Myers, the truck driver, testified to eleven years' experience in operating such vehicles, described his unit as having a gross loaded weight of some thirty tons. He fixed the posted speed limit in the area as forty-five miles per hour and told of slowing down some five or six blocks before reaching the critical intersection. Having slowed down, he had begun to increase his speed and had reached a speed of forty to forty-five miles per hour as he approached the intersection.

He saw two cars upon Thirty-second Street, one of which stopped when he was some twenty to twenty-five feet from the intersection, but the other "ease[d] on" into the road. He blew his horn, "feather[ed] his brakes", and slowed his vehicle. With truck air horn sounding, the Mouton car continued to move on out into the intersection and Myers says that he locked his brakes. His truck, with the brakes on all wheels locked, skidded and struck the Mouton vehicle broad-side upon the right front door.

Plaintiff read from a pre-trial deposition of Myers as part of his evidence in chief and Myers there testified that he was going about forty miles per hour when he first saw Mouton's car approach the intersection. At that time he, Myers, was "fifty or sixty feet back up the highway", and Mouton was looking in his direction when he started to move out into the highway. Myers then described the accident in this manner:

"Well, I didn't know exactly what he was going to do. Surely that boy is not going to pull out in front of me and I was right on my brake, and just seems like to me he just let it creep out. I don't know exactly how to word it, but it just seems like it is a hydramatic car and you know how they creep and I feel like if he had seen me he would have tried to get out of my way, but he never did go no faster and I was sitting up there holding on to the steering wheel like this trying to get it stopped and I just knew that I was going to hit him because he never did brake or try to get out of my way or anything and that is why I said he never did see me."

Myers also testified that immediately after the impact, he got out and went to the Mouton vehicle, whereupon Mouton asked: "Where did you come from?"

Plaintiff complains that defendant gives only lip service to the rule requiring that we consider only evidence supporting the jury finding as to speed. Yet, in his reply, the first evidence plaintiff brings forward in support of the finding is this statement: "Officer Block testified that based on what he saw at the scene of the collision 'it would indicate to me that the truck was going about the speed limit out there, which is 50 MPH.'" The record shows that the quoted testimony came from the witness upon cross-examination by defendant's counsel of Officer Block, theretofore tendered as the witness for plaintiff. Block was being questioned as to skid marks and the quotation is only a portion of his answer which also continued: "Forty seven feet of skid marks is not very much, is not very far." More importantly, however, *plaintiff's* objection that such answer was "a conclusion or opinion which would be invasive of the province of the jury" was *sustained*.

■■■ From the foregoing review of the evidence, it is clear that the truck was being operated within the posted legal speed limit and that the *only* testimony as to the *rate* of speed came from Myers (the driver) and Findley, the filling station at-

tendant. Plaintiff offered no testimony as to speed although there were three persons in the car in which he was riding.[3] Ordinarily, the testimony of an interested witness raises only an issue of fact for determination by the jury. But, as stated by Judge Goldberg in reviewing the Texas authorities in Taylor v. Bair, 414 F.2d 815, 818 (5th Cir., 1969):

> "The only exception to the above rule arises when the following conditions are met: (1) The testimony of the interested witness is not contradicted by that of another witness or by attendant circumstances; and (2) the testimony is clear, direct, and positive as well as being free from contradiction, inaccuracies, and circumstances tending to cast suspicion on it. Ex Parte Rohleder, Tex.1967, 424 S. W.2d 891; Moss v. Hipp, Tex.1965, 387 S.W.2d 656; Cochran v. Wool Growers Central Storage Co., 1942, 140 Tex. 184, 166 S.W.2d 904."

The myriad of cases cited by the parties have been examined carefully; and, if one facet of the law is clear, it is that in Texas, any diligent lawyer handling an automobile collision case can find at least one case which lends some support to his factual position. The court submitted not a statutory speed violation but one under the common law—excessive speed under the circumstances.[4] The question submitted to the jury embodied therein the question of negligence, and, as said in Great Atlantic & Pacific Tea Co. v. Evans, 142 Tex. 1, 175 S.W.2d 249, 251 (1943):

> "The standard to test the question of negligence vel non is the common experience of mankind, and implies generally the want of that care and diligence which ordinarily prudent men would use to prevent injury under the circumstances of the particular case.

>        *    *    *    *    *    *

> "The question of the existence of negligence and its degree generally depend upon the facts of each case; * * *"

In our case, the evidence as to the speed of the truck being "excessive" is very weak, barely rising to the dignity of evidence of a probative nature. Plaintiff argues that the issue has adequate support in the record which we have condensed, relying heavily upon Biggers v. Continental Bus System, 157 Tex. 351, 303 S.W.2d 359 (1957). Justice Greenhill, in Baumler v. Hazelwood, 162 Tex. 361, 347 S.W.2d 560, 565 (1961), explains Biggers in this manner:

> "The Biggers case held that speed of a vehicle in its proper lane could be a proximate cause of a collision with an approaching vehicle coming into its lane. It rejected the contention that excessive speed can never be a proximate cause of a collision occurring in the operator's own lane of traffic, with an automobile traveling in the opposite direction. But it did not hold that speed is always a proximate cause. It depends upon the facts."

Looking to and considering only the evidence supporting the finding of the jury and indulging every reasonable inference in favor of the finding, we are unable to say that reasonable men could not reach the conclusion that Myers was traveling at an excessive rate of speed under the circumstances. So holding, we overrule defendant's no evidence points two, four, and

3. While the jury was free to disbelieve Myers' testimony as to speed, his testimony in that respect is not evidence that the opposite of what he said is true. Safeway Stores, Inc. v. White, 162 Tex. 473, 348 S.W.2d 162, 165 (1961).

4. The jury answered "Yes" to special issue No. 4 reading: "Do you find from a preponderance of the evidence that prior to the occurrence in question Kenneth Lynn Myers was driving the truck and trailer at a greater rate of speed than a person of ordinary prudence in the exercise of ordinary care would have driven under the same or similar circumstances?"

seven addressed to special issue No. 4 on excessive speed.

■ However, when we come to consider defendant's points based upon "insufficient evidence" and that the answer is against the great weight and preponderance of the evidence, we consider the entire record. In so doing, we are convinced that the evidence is so weak and is so factually insufficient that it should be set aside and a new trial ordered. Garza v. Alviar, 395 S.W.2d 821, 823 (Tex.Sup. 1965). Defendant's points eight and nine are sustained.

In answer to special issue No. 5, the jury found that the excessive speed of the truck was a proximate cause of the accident; and, again, defendant challenges the finding upon no evidence, insufficient evidence, and great weight and preponderance of the evidence points. The trial court's definition was in substantially the same language quoted by Justice Greenhill in Baumler v. Hazelwood, supra [347 S.W.2d at p. 564, footnote 2]. This language from *Baumler* is peculiarly applicable to our case:

> "The definition embraces at least two distinct concepts, both of which must be present: (1) there must be cause in fact, —a cause which produces an event and without which the events would not have occurred; and (2) foreseeability. Even assuming, without deciding, that there is some evidence of foreseeability from speed itself under the circumstances, we find no evidence that Baumler's velocity in fact caused the incident."

As to the "second essential element of proximate cause, i. e., the foreseeability element", see Kaufman v. Miller, 414 S.W.2d 164, 167 (Tex.Sup.1967). See also, Texas & Pacific Railway Company v. McCleery, 418 S.W.2d 494, 496 (Tex.Sup.1967), and Enloe v. Barfield, 422 S.W.2d 905, 908 (Tex.Sup.1968).

In our case, as in Clark v. Waggoner, 452 S.W.2d 437, 439 (Tex.Sup.1970), "The problem has been narrowed here to the element of foreseeability" in our consideration of the proximate cause question. Justice Steakley's scholarly presentation of the rules governing foreseeability, based as it is upon a series of recent decisions by our Supreme Court, will govern our review of the issue presented here.

■ Stated simply, the question presented is whether Myers "as a person of ordinary intelligence and prudence should have anticipated the danger to others created by" his operation of the truck at the speed he was traveling at the time and place in question. Granted that the rule of foreseeability did not "require that he anticipate just how the injuries" might grow out of his conduct, nevertheless the test is "whether he ought reasonably to have foreseen that the event in question, or some similar event, would occur." [All quotations are from 452 S.W.2d at p. 440.]

■ Although Myers was traveling upon a through highway and had the right-of-way, nevertheless, he faced the caution signal at the intersection, thus making applicable the provisions of Art. 6701d, § 35, subdivision 2, V.A.C.S., reading:

> "When a yellow lens is illuminated with rapid intermittent flashes, drivers of vehicles may proceed through the intersection or past such signal only with caution."

Even though Myers was not required to anticipate negligent conduct on the part of Mouton, he could not close his eyes to that which was plainly visible and which would have been observed by a person of ordinary prudence similarly situated. Lynch v. Ricketts, 158 Tex. 487, 314 S.W.2d 273, 275 (1958); Bailey v. Tishlias, 348 S.W.2d 220, 223 (Tex.Civ.App., Dallas, 1961, error ref. n. r. e.); Fetty v. Choate, 367 S.W.2d 68, 70 (Tex.Civ.App., San Antonio, 1963, error dism.). See also, note in 3 A.L.R.3d 507, 520 (1965).

 Mouton's duty to yield the right-of-way to the Myers' truck was not absolute, but relative. McWilliams v. Muse, 157 Tex. 109, 300 S.W.2d 643, 645 (1957). But, contrary to the fact situation prevailing in *McWilliams,* supra, the jury acquitted Myers of a failure to keep a proper lookout or to take appropriate evasive action to avoid the collision. Until the very moment when it became evident that Mouton would not yield the right-of-way to the approaching truck, as required by the statute, Myers' was not required to anticipate negligent or unlawful conduct on his part. DeWinne v. Allen, 154 Tex. 316, 277 S.W.2d 95, 98 (1955).

However, under the rule governing our review of the no evidence point under review, we are mindful of the rule enunciated in Lynch v. Ricketts, supra (314 S.W.2d at pp. 275–276), that the findings of the jury with reference to negligence and proximate cause may not be disregarded "if the record discloses any evidence of probative value which, with inferences that may be properly drawn therefrom, will reasonably support the same." Under the prevailing authorities, we are of the opinion that there was some evidence of probative value supporting the finding of proximate cause; defendant's no evidence points are, consequently, overruled.

The proximate cause finding (special issue No. 5) is challenged by the defendant in points ten and eleven upon the grounds that it is against the great weight and preponderance of the evidence and is not supported by "sufficient evidence." In our review of these points, we consider the record as a whole. A careful review of the record as a whole leads us to the inescapable conclusion that the two points now under consideration have merit and should be sustained. Not only is the evidence extremely weak upon the element of foreseeability, it is likewise insufficient under Justice Greenhill's first concept enunciated in *Baumler,* supra, "cause in fact." Being of the opinion that the evidence is insufficient

in fact to support the finding, defendant's points ten and eleven are sustained. Garza v. Alviar, supra.

We have examined the remaining points brought forward by the defendant and none would require a rendition of the judgment in the event the same were found meritorious. We, therefore, pretermit a discussion thereof.

For the errors noted herein, the judgment of the trial court is now reversed and the cause remanded for a new trial.