**Sidney KNOPF, Appellant,**

v.

**DALLAS–FORT WORTH ROOFING SUPPLY COMPANY, INC., Appellee.**

**No. 05–89–00750–CV.**

Court of Appeals of Texas, Dallas.

Feb. 15, 1990.

Matt McKool, Dallas, for appellant.

Janna L. Countryman, Dallas, for appellee.

Before ENOCH, C.J., and STEPHAN F. PRESLAR[1] and SMITH[2], JJ.

1. The Honorable Stephen F. Preslar, Chief Justice, retired, Court of Appeals, Eighth District of Texas at El Paso, sitting by assignment.

## OPINION

SMITH, Justice.

Sidney Knopf appeals from a summary judgment in favor of Dallas–Fort Worth Roofing Supply Company, Inc. (D–FW), appellee, alleging that fact issues were raised and that the trial court erred in granting the appellee a summary judgment.

Knopf entered into a contract with Ed MacDonald and MacDonald Roofing Company, Inc., to re-roof Knopf's building located in Dallas County, Texas, for $35,000. When MacDonald and the MacDonald corporation failed to complete the work pursuant to the terms of the contract, Knopf filed suit for his damages against the MacDonalds and their roofing material supplier, D–FW. The MacDonalds failed to answer, and a default judgment was entered against them. That judgment was severed from the cause of action, and the present appeal pertains only to Knopf's cause of action against D–FW which is based on negligence, implied contract, implied warranty, fraud, fraudulent concealment, fraudulent conversion and conspiracy.

The basic facts of this case are fairly simple. After Knopf consummated his contract with MacDonald and MacDonald Roofing, he made his initial payment on the contract in the sum of $17,500. This payment was made by check, payable to "MacDonald Roofing Company, Inc., and D–FW Supply Company." MacDonald took the check to D–FW and requested that it endorse it. MacDonald and MacDonald Roofing were cash customers of D–FW, and D–FW endorsed the check after ascertaining that it had no joint check agreement with Knopf pertaining to this project. Several days later, MacDonald made his first cash purchase of supplies for this project from D–FW. Knopf later issued another check made payable to MacDonald and D–FW. This time MacDonald took the check to D–FW and requested that it not endorse the check. D–FW honored his request and

2. The Honorable Jackson B. Smith, Jr., Justice, retired, Court of Appeals, First District of Texas at Houston, sitting by assignment.

did not endorse the check. There is nothing in the record to indicate why this peculiar request was made.

Knopf's records show that he made several payments to MacDonald and MacDonald Roofing, which payments amounted to a total of $31,166. D–FW records show that MacDonald made four cash purchases of material for the Knopf project for a total of $7,956.90.

In his first point of error, Knopf alleges that the summary judgment proof before the trial court raised fact issues concerning D–FW's negligence and that the trial court erred in granting a summary judgment.

Knopf argues that, when D–FW endorsed his check without contacting or making inquiry of him about why he placed D–FW's name on the check and without making arrangements to supply materials for his project, D–FW was negligent and such negligence was the proximate cause of his damages.

Knopf's argument presumes that D–FW had a legal duty to contact or make inquiry of him. He cites section 3.414 of the Texas Business and Commerce Code as authority for his position that D–FW had a legal duty to contact or make inquiry of him.

Texas Business and Commerce Code § 3.414 states:

(a) Unless the endorsement otherwise specifies (as by such words as "without recourse") every indorser engages that upon dishonor and any necessary notice of dishonor and protest he will pay the instrument according to its tenor at the time of his indorsement to the holder or to any subsequent indorser who takes it up, even though the indorser who takes it up was not obligated to do so.

(b) Unless they otherwise agree indorsers are liable to one another in the order in which they indorse, which is presumed to be the order in which their signatures appear on the instrument.

TEX.BUS. & COM.CODE ANN. § 3.414 (Vernon 1968).

Section 3.414 does not support Knopf's position. That section addresses only the effect of an endorsement with respect to the holder of an instrument and to other indorsers.

The wording of section 3.414 is clear and unambiguous, and it in no manner establishes any responsibility or liability of an indorser on a check to the maker of a check. It appears that Knopf is asking this court to expand or enlarge section 3.414 to extend its coverage of an endorser's liability to the maker of a check. Such action is the prerogative of the legislature, not appellate courts. Appellate courts may not modify, repeal, or rewrite a statute to conform to its own notions of justice, policy, propriety, or wisdom. *Franklin v. Pietzsch*, 334 S.W.2d 214, 219 (Tex.Civ.App. —Dallas 1960, writ ref'd n.r.e.). We hold that section 3.414 imposes no duty on any individual indorser of a check (D–FW) to protect the maker of a check (Knopf).

Knopf also contends that it was the custom and standard in the roofing supplier industry that, when two-payee checks are issued for the purpose of purchasing supplies, such practice is for the protection of the property owner, and that D–FW was negligent in indorsing his check without an agreement from himself or a purchase of supplies from D–FW for the full amount of the check. He argues that this evidence raises a fact issue.

The standards for reviewing a motion for summary judgment are well established. The movant has the burden of showing there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. *Guaranty Fed. Sav. Bank v. The Horseshoe Operating Co.*, 33 Tex. Sup.Ct.J. 150, 153 (Jan. 6, 1990). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true. *Id.* Every reasonable inference must be indulged in favor of the non-movant, and any doubts resolved in its favor. *Id.*

D–FW contends that no fact issue has been raised because the custom in the roofing supply industry is that if an owner of property desires to protect himself from his contractor misapplying funds that are allo-

cated for roofing supplies for a specific project, he should enter into some form of agreement with the supplier. D–FW asserts that this is usually accomplished by having the supplier as a party to the original contract between the owner and the contractor or by having a separate contract between the owner and the supplier. In either form of contract, D–FW states that the agreement is that the owner will make his check jointly payable to the supplier and the contractor, and, when the supplier is presented with the check, it will apply the funds to the purchase price of supplies. If there are any funds in excess of the purchase price of the supplies purchased, the supplier will retain such funds and apply them to later purchases made for the project.

D–FW asserts that it not only did not join into any type agreement with Knopf concerning this project, but it was never contacted or requested by Knopf to enter into an agreement. It further asserts that there is no evidence that contradicts its position.

We agree with the D–FW assertion that there is no evidence that Knopf ever contacted D–FW prior to his lawsuit, in any manner. We also agree with D–FW that no contract or agreement was ever entered into between Knopf and D–FW. We disagree with its assertion that Knopf has not contradicted its statements concerning the custom, usage, and standard in the roofing supply industry, where a two-payee check is made payable to the contractor and supplier.

Attached to Knopf's response to D–FW's motion for summary judgment is the affidavit of Joe Fraser. In Fraser's affidavit, he states that he has been in the roofing repair business for 17½ years and is familiar with the "terms, expectations, business practices, and customs of that trade and industry." He then states:

> It is commonly understood in the roof repair business and in construction contract business as a whole that when an owner issues a two (2) payee check made payable to both the contractor and its material supplier, that the entire amount of the check is intended to be applied towards the purchase of supplies for the project unless otherwise specified by the owner. This is understood by both the contractor and the supplier of the materials. Under these circumstances, a supplier should only accept the check to sell supplies for that project or contact the owner to obtain authority to apply the proceeds otherwise.

This statement by Fraser contradicts the deposition and affidavit statements made by D–FW witnesses concerning the custom, usage, and standard of how two-payee checks are used in the roofing supply industry. Thus, a fact issue has been raised as to the customs, usages, and standards in the roofing supplier industry. But, D–FW contends that, even if a fact issue is raised as to custom and usage in the trade, it still owes no duty to Knopf for merely endorsing his check. Knopf has alleged that D–FW, by endorsing his check and giving the proceeds of the check to MacDonald, was negligent because it did not follow the customs and standards of its own roofing supply industry.

To sustain a cause of action for negligence it is necessary to produce evidence of a duty, a breach of that duty, proximate cause, and damages. *Colvin v. Red Steel Co.*, 682 S.W.2d 243, 245 (Tex.1984). The duty D–FW owed to Knopf was to act as a reasonable and prudent person would have acted under the same or similar circumstances regarding foreseeable risk. *Great Atlantic & Pacific Tea Co. v. Evans*, 142 Tex. 1, 175 S.W.2d 249, 250–51 (1943).

Applying the standard of care set out in *Great Atlantic & Pacific Tea Co.* to the testimony of Knopf's witness, Fraser, it is apparent that he is saying that D–FW did not follow the custom and usages of the roofing supply industry and did not act as a reasonable and prudent roofing supplier would have acted under the same or similar circumstances.

Accepting Fraser's statement as the custom, this still leaves the issue of proximate cause and the question of foreseeability as an element of that issue. Under Texas law the issue of foreseeability is contained in the definition of proximate cause. *Motsen-*

*bocker v. Wyatt*, 369 S.W.2d 319, 323 (Tex. 1963).

D–FW vigorously asserts there is no way that it could have foreseen the specific events that caused Knopf's damages. To foresee specific events is not the standard to be applied to determine foreseeability. For a result to be legally foreseeable, it is not required that a particular event complained of should have been foreseen. The proper test is that the event is of such a general character as might have been anticipated, and that the injured party be so situated with relation to the wrongful act that injury to that person or one similarly situated, might have been foreseen. *Motsenbocker*, 369 S.W.2d at 323; *see and compare, Carey v. Pure Distributing Corp.*, 133 Tex. 31, 124 S.W.2d 847, 849 (1939).

In reviewing the evidence in this case, we are required, as noted above, in summary judgment cases, to disregard evidence favorable to the movant and consider only evidence favorable to the respondent. In the present case, there is evidence that when a contractor presents an owner's check to a roofing supplier, and the check is made payable to the contractor and supplier, it is for the protection of the owner. There is also evidence that the custom and usage of two-payee checks in the roofing supply industry requires a supplier to retain the proceeds of the check and apply them only to purchases or disburse them in any other manner directed by the owner. Arguably, this evidence could be used as favorable to the question of foreseeability because there must have been some reason for the roofing supply industry to have adopted, if it did, its custom and manner of handling a two-payee check. Because this is an appeal from a summary judgment, and because there is some evidence favorable to Knopf concerning the element of foreseeability, we decline to hold as a matter of law that Knopf's injury was not foreseeable as a result of D–FW's actions. We hold that a fact issue has been raised concerning negligence and proximate cause. Appellant's first point of error is sustained.

In his eighth point of error, Knopf asserts that fact issues were raised as to the existence of "the proximate cause" of the damages suffered by Knopf as a result of D–FW's actions. In point of error one, we have fully discussed the contentions of both parties concerning the causal connection required in a proximate cause issue. We have heretofore held that a fact issue has been raised by the evidence. Knopf's eighth point of error is sustained.

In Knopf's points of error two and three, Knopf asserts that there were fact issues raised concerning the existence and enforceability of an implied contract and implied warranty between himself and D–FW. In his points of error four through seven, Knopf alleges that fact issues were raised as to D–FW's fraud, conspiracy, fraudulent concealment, and fraudulent conversion. Although Knopf has alleged a different theory for a basis of recovery under these six points of error, they all assert the same basis for a reversal of the trial court's summary judgment; that is, that a fact issue had been raised on each of the alleged theories. Because we have sustained Knopf's points of errors one and eight, which will require a reversal and a trial on the merits, we find it unnecessary to address his points of error two through seven.

The judgment of the trial court is reversed and this cause of action is remanded to the trial court.