William B. SOUTHERLAND,
II, Appellant,

v.

The KROGER COMPANY and
John Casto, Appellees.

No. 01–96–00362–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Sept. 11, 1997.

Gerald B. Scheve, Houston, for appellant.

Byron K. Barclay, Elelyn T. Ailts, Brock
C. Akers, Houston, for appellees.

Before SCHNEIDER, C.J., MIRABAL
and O'CONNOR, JJ.

## OPINION

MIRABAL, Justice.

This is an appeal from a summary judgment granted in favor of The Kroger Company and its employee, John Casto, in a personal injury action brought by William B. Southerland II, a former employee at Kroger. We affirm.

The summary judgment evidence showed that plaintiff worked part-time at a Kroger grocery store during high school and college, from the summer of 1991 through May 1994. He was employed part time as a checker at Kroger at least from September 1993, when junior college classes started, through May 1994, while he continued his education at North Harris County Junior College.[1] On

---

1. Plaintiff may have worked as a checker throughout high school too, but the record is not clear. The record shows that plaintiff worked as a checker as he continued his education. He started junior college in the fall of 1993. His injury occurred approximately five months later,

January 25, 1994, while plaintiff was checking out groceries for a Kroger customer, he reached down to pick up a box of soap[2] from the bottom part of the customer's basket, and as he lifted the soap box up, he felt pain in his back. He lifted the soap box further, slid it across the scanner and let it go down the belt to the sacker.

Plaintiff sued Kroger and his immediate supervisor to collect damages for his back injury, alleging negligence and gross negligence for: (1) not providing and enforcing safety rules; (2) not properly training plaintiff; and (3) not furnishing safe instrumentalities of work.

As a "nonsubscriber" under Texas workers' compensation law, Kroger was responsible for work-related injuries under common-law principles of negligence. *See* Tex.Lab.Code Ann. § 406.033(d) (Vernon 1996)[3]; *see also Werner v. Colwell,* 909 S.W.2d 866, 868 (Tex.1995). To establish negligence, evidence must be produced to establish a duty, a breach of that duty, and damages proximately caused by the breach. *El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex.1987). Although an employer is not an insurer of the employees' safety at work, an employer does have a duty to use ordinary care in providing a safe work place. *Werner,* 909 S.W.2d at 869.

In its motion for summary judgment, Kroger asserted (1) it was not negligent because the plaintiff was performing his usual, normal everyday work when he lifted the detergent from under the basket and (2) it could not reasonably foresee that plaintiff would be injured from lifting a box of detergent. The motion stated in part:

> The undisputed summary judgment facts show that on the occasion in question, Southerland was allegedly injured performing his normal, everyday work; the act of lifting a single box of laundry detergent. This lifting of a box of detergent is work that plaintiff had performed many times before, and that thousands of other Kroger employees, like plaintiff, as well as hundreds of thousands of grocery customers perform on a daily basis.

. . . . .

> It is long settled in Texas that where an employee is performing the same character of work that he had always done, and that other employees in other stores were required to do, there was no negligence. *Werner v. Colwell,* 909 S.W.2d 866, 869 (Tex.1995), citing *Great Atlantic & Pacific Tea Co. v. Evans,* [142 Tex. 1] 175 S.W.2d 249, 250 (Tex.1943).

In plaintiff's response to Kroger's motion for summary judgment, plaintiff asserted (1) he was neither offered the opportunity nor allowed to attend a checker training program which included training on safe lifting procedures; (2) he was not furnished any safety rules; and (3) he was not furnished a back safety belt. The trial court granted summary judgment to defendants.

In four points of error, plaintiff asserts the trial court erred in granting summary judgment because there are genuine and material issues of fact precluding summary judgment.

---

in January 1994. Plaintiff states in his pleadings:

> "Plaintiff, William B. Southerland, II, is a twenty-one year old former part-time employee of Defendant, The Kroger Company. Mr. Southerland was employed as a part-time checker while he continued his education."

**2.** The object was an orange box brand of detergent, like "Tide." It was "one of the ones that are, like, 12 to 15 pounds, somewhere in there."

**3.** Section 406.033 of the Texas Labor Code (Vernon 1996), entitled "Common–Law Defenses; Burden of Proof," provides as follows:

(a) In an action against an employer who does not have workers' compensation insurance coverage to recover damages for personal injuries or death sustained by an employee in the course and scope of the employment, it is not a defense that:

(1) the employee was guilty of contributory negligence;

(2) the employee assumed the risk of injury or death; or

(3) the injury or death was caused by the negligence of a fellow employee.

. . . . .

(d) In an action described by Subsection (a) against an employer who does not have workers' compensation insurance coverage, the plaintiff must prove negligence of the employer or of an agent or servant of the employer acting within the general scope of the agent's or servant's employment.

Summary judgment is proper only when the movant establishes that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex.1995); *Bangert v. Baylor College of Medicine,* 881 S.W.2d 564, 566 (Tex.App.—Houston [1st Dist.] 1994, writ denied). A defendant who conclusively negates one of the essential elements of the plaintiff's cause of action is entitled to summary judgment. *Wornick Co. v. Casas,* 856 S.W.2d 732, 733 (Tex.1993). In reviewing the summary judgment, we must indulge every reasonable inference in favor of the nonmovant and resolve all doubts in its favor. *Johnson,* 891 S.W.2d at 644; *Bangert,* 881 S.W.2d at 565–66.

■ Plaintiff places special emphasis on the evidence that he did not participate in a formal safety training program offered to new Kroger checkers. It is uncontested the safety training program was required for *new* checkers only;[4] plaintiff was an experienced checker who had held the job for approximately five months prior to the injury, without incident, and who had worked at Kroger part time for two and a half years. The uncontroverted evidence shows that Kroger posted, in the places around the store where schedules are posted, "a set of safety rules and a diagram on proper lifting."

With regard to plaintiff's claim that defendants were negligent for not providing him with a safety belt for his back, the evidence is uncontested that:

—In late 1993/early 1994, Kroger offered every employee the opportunity to purchase a back belt, at cost, through the company.

—Plaintiff offered no evidence showing he ever requested a back belt, was rejected

for one, or could not afford one. He simply did not obtain one.

—Kroger checkers have never been required to wear back belts.

—Plaintiff was a young man who played junior high and high school football just prior to coming to work at Kroger.[5] He had worked as a checker for Kroger without mishap or incident for approximately five months prior to the incident on January 25, 1994.

■ The law is clear that in cases like this, when it is uncontroverted that the lifting involved is not unusual and does not pose an increased threat of injury,[6] there is no negligence as a matter of law. *Werner,* 909 S.W.2d at 869.

The facts of this case are similar in many respects to the facts of the *Evans* case. There, the plaintiff alleged the grocery store was negligent for requiring him to carry 100–pound sacks of potatoes without someone to assist him, or without furnishing him mechanical means on which to haul the potatoes. The supreme court held the grocery store was not negligent as a matter of law, stating:

> Evans was a strong, robust young man. He was merely required to perform work that he had been doing for this same employer for several months before this occasion. He was doing the same character of work that other employees in other grocery stores constantly and generally did ... Evans cannot complain if A & P merely required him to do the usual and customary work required of persons in his line of employment, or, stated in another way, required by the character of the business in which he was employed. Finally, we think that the facts of this record fail, as a matter of law, to show that A & P ought to have foreseen that Evans would

4. Defendant Casto testified he believed it was a reasonable and prudent thing for Kroger to ensure that all employees went to safety training *before they were given uniforms to act as checkers* because "it wouldn't make sense to put someone on the front lines if they didn't know what they were doing."

5. According to plaintiff's deposition testimony, he was an offensive tackle on his high school

football team. In the record, he is described as a "big boy."

6. We take judicial notice that grocery store checkers, including Kroger checkers, perform the act of picking up a box of laundry detergent on a regular basis. *See Eagle Trucking Co. v. Texas Bitulithic Co.,* 612 S.W.2d 503, 506 (Tex. 1981) (well known and easily ascertainable facts may be judicially noticed).

be injured by doing the character of work required of him in this instance.

*Evans,* 175 S.W.2d at 251 (cited with approval in *Werner,* 909 S.W.2d at 869.).

Plaintiff relies on *J. Weingarten, Inc. v. Moore,* 441 S.W.2d 223 (Tex.Civ.App.—Houston [1st Dist.] 1969), *aff'd in part and rev'd in part on other grounds,* 449 S.W.2d 452 (Tex.1970), which also involved a checker who was injured on the job. However, *Weingarten* is distinguishable in that the evidence there showed the design of the involved check-out counter was defective, and there was no indication that grocery checkers generally were required to work under the conditions required of plaintiff. *Id.* at 224, 226.

Following supreme court precedent in *Evans* and *Werner,*[7] we overrule plaintiff's points of error.

We affirm the judgment.

O'CONNOR, J., dissenting.

O'CONNOR, Justice, dissenting.

I dissent. I would reverse and remand for a trial on the merits.

William B. Southerland, the plaintiff, alleged Kroger Company was negligent for (1) not providing and enforcing safety rules, (2) not properly training him, and (3) not furnishing safe instrumentalities of work. Unless disproved by Kroger *as a matter of law,* these allegations assert genuine issues of material fact about Kroger's negligence.[1] *See Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex.1995); *Bangert v. Baylor College of Medicine,* 881 S.W.2d 564, 566 (Tex.App.—Houston [1st Dist.] 1994, no writ).[2]

In Kroger's motion for summary judgment, it alleged (and the majority holds it established as a matter of law), that: (1) the plaintiff was performing his usual, normal everyday work when he lifted the box detergent, and (2) it was not foreseeable that the plaintiff would be hurt when he lifted the box of detergent.

To prove the first ground, Kroger was required to show that the plaintiff was performing his usual, normal, everyday work at the time he was injured. Kroger provided no summary judgment evidence of this. It did not prove how long the plaintiff had worked as a checker, or that it was his usual, normal, everyday work to lift boxes of detergent. It would have been simple for Kroger to provide this evidence, but Kroger did not. Perhaps it forgot.

To prove the second ground, Kroger was required to show that it was not foreseeable that the plaintiff would be hurt when he lifted a box under the circumstances that he did. Kroger introduced evidence that it made safety belts available at cost, and posted notices about safe lifting techniques. The plaintiff submitted the deposition of John Casto, a Kroger employee who was the plaintiff's supervisor, about the necessity for

---

7. See also the following cases that concluded the employer was not negligent as a matter of law: *J. Weingarten, Inc. v. Sandefer,* 490 S.W.2d 941, 946 (Tex.Civ.App.—Beaumont 1973, writ ref'd n.r.e.) (store clerk injured while putting two glasses under counter); *Fields v. Burlison Packing,* 405 S.W.2d 105, 111 (Tex.Civ.App.—Fort Worth 1966, writ ref'd n.r.e.) (employee injured while lifting tub of hamburger meat); *Great Atlantic & Pacific Tea Co. v. Lang,* 291 S.W.2d 366, 368 (Tex.Civ.App.—Eastland 1956, writ ref'd n.r.e.) (grocery store employee injured while lifting carton of toilet tissue).

1. It is important to remember that Kroger was a "non-subscriber" under Texas workers' compensation law, and Kroger could not assert as a defense that (1) the plaintiff was guilty of contributory negligence or (2) the plaintiff assumed the risk of injury. TEX.LAB CODE § 406.033(a) (1996).

2. Because the majority does not provide facts about the plaintiff's injury, I summarize them here. Immediately after the plaintiff picked up the large box of detergent from underneath a customer's basket, the plaintiff felt a sharp pain in his back and his legs and could not stand up straight. He finished helping the customer and paged his supervisor, John Casto. He told Casto he hurt his back. He finished his shift 45 minutes later and went home. The plaintiff returned to work two days later, even though he was still in pain. On May 5, 1994, the plaintiff finally went to the doctor. After seeing the doctor, the plaintiff notified Kroger he was going to have to take two weeks off for back therapy. The plaintiff submitted an accident report to Kroger and went to the doctor Kroger wanted him to see. An orthopedic doctor told the plaintiff he had a herniated disk and in September 1994, he underwent surgery.

training checkers in lifting procedures. According to Casto, in 1993 and 1994 (the plaintiff was injured in January 1994), each checker was required to go to a two-day training course on checker procedures. After the checkers were sent to their respective stores, they were given follow-up training on lifting techniques and other safety training. The staffing coordinator was responsible for ensuring each checker went to the safety training. Casto agreed it was important to teach people proper lifting techniques. The plaintiff did not attend the training course. In his deposition, Casto testified as follows:

Q: In 1993, were checkers given any specific training with respect to proper lifting techniques?

A: Yes.

Q: When was that?

A: That was during the follow-up training that I had mentioned earlier. Once they completed their initial training, they were sent to their respective stores for safety training.

.     .     .     .     .

Q: Would you, as the backup customer relations manager, just presume that each checker went to safety school? Or did you have a mechanism to ensure that they all went to safety school?

A: Before any employee is ever put on any schedule for work, they are *required to complete all training.*

Q: And that includes safety training?

A: Right.

Q: And is that a *reasonable and prudent thing for Kroger to do,* do you believe?

A: *Yes.*

Q: Why do you believe that it was a reasonable and prudent thing for Kroger to do to ensure that all employees went to the safety training before they were given uniforms to act as checkers?

A: *Basically, I mean, it wouldn't make sense to put someone on the front lines if they didn't know what they were doing.*

Q: From your experience, do you think it is important to teach people proper lifting procedures?

A: *Absolutely.*

Q: Why is that?

A: For safety reasons. I mean, people don't want to get hurt, and people don't want to see other people get hurt.

Q: And from your experience, is it important to teach people how to position their bodies before they lift things?

A: Yes.

Q: And is it important to teach people how to bend at their knees before they lift things?

A: Yes.

Q: Are those all things taught at the Kroger safety school?

A: Yes.

Q: Have you been to the same school?

A: Yes. And I keep going to them all the time. Even though I don't have to, I sit in on them. I learn something new every day, I believe.

It is clear from Casto's testimony that there was a threat of injury to the plaintiff from lifting if he was not properly trained. Kroger did not provide any summary judgment evidence that challenged this testimony.

### Impermissible Inferences

The problem with the majority's opinion is that it repeatedly makes inferences in favor of Kroger, the movant for summary judgment, instead of making them in favor of the plaintiff, the nonmovant. *See Science Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex.1997).

### 1. The amount of time the plaintiff worked as checker

The main issue in this case was raised by the Court at oral argument: how long had the plaintiff worked as a checker at Kroger's at the time he was injured? Kroger did not address this issue in its motion for summary judgment, in its summary judgment proof, or in its initial brief. In its motion for summary judgment, Kroger simply said that the plaintiff was working as a "checker" at the time of his injury. In a postsubmission brief, Kroger claimed for the first time that the plaintiff worked as a checker during the entire

time he worked for Kroger, over three years. Kroger pointed to the following statement in the plaintiff's response to the motion for summary judgment, in which the plaintiff said:

> Plaintiff, William B. Southerland, II, is a twenty-one year old part-time employee of Defendant, The Kroger Company. Mr. Southerland was employed as a part time-checker while he continued his education.

This is not a statement that the plaintiff worked as a checker the entire time he worked at Kroger's. This simply states that the plaintiff was a part-time employee and a part-time checker; it does not specify the period of time in which he worked as a checker.

The majority refuses to go along with Kroger's view of the record, but comes up with its own. The majority decides that the plaintiff worked as a checker for Kroger for "at least" five months and perhaps longer. Neither the pleadings nor the summary judgment proof support the majority's view of the record. The majority bases that assumption on the plaintiff's amended petition, where it states: "At the time of his injury, Plaintiff was working as 'checker' for Kroger." Nothing in the summary judgment proof (two depositions, one affidavit) contains any information about the length of time the plaintiff worked as a checker.

The majority decides that the plaintiff spent "at least" five months as a checker because of the use of the phrase "part-time checker while he continued his education," in his petition. The majority assumes from the fact that the response says the plaintiff was employed as a part-time checker "while he continued his education," he was working as a checker from the time he was began junior college, in September of 1993.

The majority's assumption is not permissible for four reasons. First, the majority cannot make this inference because it favors Kroger, the movant; all inferences must be made in favor of the nonmovant. Second, the majority cannot make this inference because there is no evidence from which this fact can be inferred against the plaintiff; Kroger had the burden of proof and it introduced no evidence on this issue. Third, the

majority cannot make this inference based on the plaintiff's pleadings in favor of the movant; in the absence of evidence on this issue, we must draw all permissible inferences from the pleadings in favor of the plaintiff as nonmovant.

Last, the plaintiff could be said to be "continuing" his education just because he is in junior college, without referring to how long he had been in junior college. From the record, we know only that the plaintiff was working at Kroger when he was injured in January in 1994. Based on the pleadings and without any evidence on the issue, we cannot assume the plaintiff worked as a checker for five months before he was injured.

## 2. The plaintiff was performing usual tasks

The second assumption the majority makes in favor of Kroger (the movant), as opposed to in favor of the plaintiff (the nonmovant), is when it states that the plaintiff was performing his usual tasks when he was injured. There is simply no summary judgment proof that the plaintiff was performing his usual tasks when he lifted the box of detergent. Because the majority assumes the plaintiff was performing his usual task, it finds that Kroger was not negligent. For example, the majority states that

> It is uncontested the safety training program was required for *new* checkers only; plaintiff was an experienced checker who had held the job at least five months prior to the injury, without incident. . . .

The majority overlooks the fact that, when the plaintiff was a *new* checker——whenever that was—Kroger did not train him. The majority also overstates the plaintiff's experience; nowhere in the record is the plaintiff referred to as an experienced checker, and nowhere in the record does it state that the plaintiff had worked as a checker for five months.

Assume for a moment that the majority is correct, that the plaintiff was a new checker five months before the accident, which was in September of 1993. That does not help Kroger or support the majority's holding. Casto

testified that *all* checkers were required to go through training in 1993 and in 1994. Thus, even under the majority's timetable, the plaintiff should have received training for lifting before he became a checker.

### 3. Impermissible legal conclusion

The third assumption the majority makes in favor of Kroger (the movant), as opposed to in favor of the plaintiff (the nonmovant), is when it states that

> The uncontroverted evidence shows that Kroger posted, in the places around the store where schedules are posted, "a set of safety rules and a diagram on proper lifting."

The fact that Kroger posted a safety diagram and that it was "uncontroverted," does not establish that, as a matter of law, Kroger was not negligent. At best, it creates a fact issue regarding whether Kroger properly instructed the plaintiff on lifting techniques. There is also a material fact question regarding whether Kroger provided safe instrumentalities by offering its employees the option of buying safety belts at cost and by not requiring them to wear them.

### 4. Judicial notice of missing proof

Finally, the majority takes the extraordinary step of supplying defendant's missing summary judgment evidence by resort to judicial notice. To assist the defendant-movant in proving its case, the majority takes judicial notice that checkers regularly pick up detergent boxes, citing *Eagle Trucking Co. v. Texas Bitulithic Co.*, 612 S.W.2d 503, 506 (Tex.1981). In that case, the Supreme Court acknowledged that well-known and ascertainable facts may be judicially noticed. *Id.* However, the Supreme Court also said a judge's personal knowledge is not judicial knowledge. *Id.* The Supreme Court said the court of appeals erred when, after a jury trial, it "supplied the missing proof by its resort to judicial notice." *Id.* Here, there has been no jury trial, only a summary judgment, and the majority is "supplying the missing proof by resort to judicial notice."

### Kroger's duty to the plaintiff

An employer has certain nondelegable and continuous duties to his employees. *Farley v. M. M. Cattle Co.*, 529 S.W.2d 751, 754 (Tex.1975). These include a duty to provide rules and regulations for the safety of employees, a duty to warn them of the hazards of their employment, a duty to supervise their activities, a duty to furnish a reasonably safe place to work, and a duty to furnish reasonably safe instrumentalities with which to work. *Farley*, 529 S.W.2d at 754; *cf. Otis Elevator Co. v. Joseph*, 749 S.W.2d 920, 926 (Tex.App.—Houston [1st Dist.] 1988, no writ) (these duties are nondelegable). The standard of conduct required of the employer is ordinary care based on general negligence principles. *Exxon v. Tidwell*, 867 S.W.2d 19, 21 (Tex.1993).

This Court has held "an ordinarily prudent person in the exercise of ordinary care might well have reasoned that there was a danger in lifting a heavy object while bent over in an awkward position, and that the danger of injury would be increased by twisting the body around while conveying such an object." *J. Weingarten, Inc. v. Moore*, 441 S.W.2d 223, 226 (Tex.Civ.App.—Houston [1st Dist.] 1969), *aff'd in part and rev'd in part on other grounds*, 449 S.W.2d 452 (Tex.1970). In *Moore*, a grocery checker injured her back when she bent over to lift a 25–pound sack of sugar and twisted around to toss it across an opening of a counter. *Id.* at 224. The checker sued her employer under a negligence theory for requiring her to do this and for not giving her proper instructions on lifting. *Id.* at 225. We held there was sufficient evidence to charge the employer with a duty to instruct its employee as to the manner in which she could perform her duties safely. *Id.* at 226.

The majority distinguishes *Moore* on two grounds: (1) in *Moore* there was evidence regarding the design of the counter and (2) in *Moore* there was no evidence that checkers were generally required to work under the same conditions as the plaintiff. Op. at ——. However, in *Moore*, as in this case, the plaintiff complained about the unsafe "instrumentalities" of work and about the negligence of the employer-grocer and the condi-

tions under which the checker were required to work. What actually distinguishes the two cases is that Moore was permitted to take her case to the jury; the plaintiff in this case was not. The plaintiff in this case should have the same opportunity.

The majority relies on *Werner v. Colwell,* 909 S.W.2d 866, 869 (Tex.1995) and *Great Atlantic & Pacific Tea Co. v. Evans,* 142 Tex. 1, 175 S.W.2d 249, 250 (1943), on the issue of an employer's negligence when employees are injured performing their usual tasks. Both of these cases are distinguishable in that the Supreme Court reviewed a record that was developed *during a trial on the merits* to reach the decision that certain facts were established as a matter of law. There is an enormous difference between deciding a fact issue as a matter of law after *a trial on the merits* and deciding a fact issue as a matter of law after *a summary judgment* proceeding. Once a case is tried on the merits and the judgment is rendered, the presumptions are all in favor of the party who won the case. However, in a summary judgment proceeding, the presumptions are in favor of the a nonmovant, the party who lost the summary judgment proceeding.[3]

I would find that Kroger did not disprove, as a matter of law, that the plaintiff had no cause of action against it.

---

**3.** In footnote 7 the majority lists three other cases that it cites as support for its holding. The majority states that in all three cases the courts concluded that the employer was not negligent as a matter of law. That is true, but in all three cases the courts reached that conclusion after the plaintiffs presented their cases to a jury, not in a summary judgment hearing. Here, the plaintiff was a nonmovant and was not required to prove his claim; the defendant was required to prove he has no claim to present to the jury. Defendant did not carry its burden, and the plaintiff here should be permitted to go to the jury.