**Ollie B. HOWARD, Appellant,**

v.

**Bruce F. BACHMAN, Appellee.**

**No. 4790.**

Court of Civil Appeals of Texas, Eastland.

June 6, 1975.

Rehearing Denied June 27, 1975.

Pete Baker, Wagstaff, Harrell, Pope, Alvis, Dickenson & Erwin, Abilene, for appellant.

Malcolm C. Schulz, Abilene, for appellee.

WALTER, Justice.

Bruce F. Bachman recovered a $1,271.30 judgment for damages against Ollie B. Howard resulting from an intersectional collision. Howard has appealed.

The material issues submitted to the jury and their answers are as follows:

"QUESTION NO. 1

On the occasion in question, did BRUCE F. BACHMAN:

a. Fail to keep such a lookout as a person using ordinary care would have kept?

Answer: <u>No</u>

b. Drive at a greater rate of speed than a person using ordinary care would have driven?

Answer: Yes

c. Fail to make such application of the brakes as a person using ordinary care would have made?

Answer: No

If you have answered any subdivision of Question No. 1 'yes' and only in that event, then answer the corresponding subdivision of Question No. 2.

QUESTION NO. 2

Was such act or omission a proximate cause of the occurrence in question with respect to:

a. Failure to keep such a lookout as a person using ordinary care would have kept?

Answer: ____

b. Driving at a greater rate of speed than a person using ordinary care would have driven?

Answer: No

c. Failure to make such application of the brakes as a person using ordinary care would have made?

Answer: ___

QUESTION NO. 3

On the occasion in question did OLLIE B. HOWARD:

a. Fail to keep such a lookout as a person using ordinary care would have kept?

Answer: Yes

b. Fail to yield the right-of-way to the vehicle driven by Bruce Bachman?

Answer: Yes

You are instructed that the driver of a vehicle intending to turn to the left within an intersection, or into an alley, private road, or driveway, shall yield the right-of-way to any vehicle approaching from the opposite direction which is within the intersection, or so close thereto as to constitute an immediate hazard. An approaching vehicle is an 'immediate hazard' if it is so close that a person using ordinary care would reasonably conclude that he could not complete a turn without danger of collision.

If you have answered any subdivision of Question No. 3 'yes' and only in that event, then answer the corresponding subdivision of Question No. 4

QUESTION NO. 4

Was such act or omission a proximate cause of the occurrence in question with respect to:

a. Failure to keep such a lookout as a person using ordinary care would have kept?

Answer: No

b. Failure to yield the right-of-way to Bruce Bachman as that term is above defined.

Answer: Yes"

"QUESTION NO. 7

What percentage of the negligence that caused the occurrence do you find from a preponderance of the evidence to be attributable to each of the parties found by you to have been negligent?

The percentage of negligence attributable to a party is not necessarily measured by the number of acts or omissions found.

Answer by stating the percentage, if any, opposite each name.

BRUCE F. BACHMAN 40%

OLLIE B. HOWARD 60%

QUESTION NO. 8

Find from a preponderance of the evidence the reasonable cost in Taylor County, Texas, of repairs, if any, necessary to restore Bruce Bachman's vehicle to the condition in which it was immediately before the occurrence in question.

Answer in Dollars and Cents, if any

ANSWER: $1271.30"

Article 2212a, Vernon's Ann.Civ.St., is as follows:

"Modified comparative negligence.

Section 1. Contributory negligence shall not bar recovery in an action by any person or party or the legal representative of any person or party to recover damages for negligence resulting in death or injury to persons or property of such negligence is not greater than the negligence of the person or party or persons or parties against whom recovery is sought, but any damages allowed shall be diminished in proportion to the amount of negligence attributed to the person or party recovering."

■ Howard contends Bachman's negligence need not be a proximate cause of the occurrence in question for Article 2212a to become applicable. We disagree. In Calvert v. Texas Pipe Line Company, 517 S.W.2d 777 (Tex.1974), the court said:

"The fundamental and dominant rule controlling the construction of a statute is to ascertain if possible the intention of the Legislature expressed therein. Sec. 6, Article 10, Vernon's Ann. Revised Civil Statutes. In Calvert v. British-American Oil Producing Co., 397 S.W.2d 839 (Tex. 1965), at 842 this Court said:

'Article 10, Vernon's Annotated Civil Statutes, provides general rules for construing all civil statutory enactments. The article provides that the provisions of statutes shall be liberally construed with a view to effect their objects. The courts necessarily look diligently for the intention of the Legislature as the intention of the Legislature is the dominant consideration in construing a statute.'"

Section 6 of Article 10, V.A.C.S., provides as follows:

"In all interpretations, the court shall look diligently for the intention of the Legislature, keeping in view at all times the old law, the evil and the remedy."

In State v. Dyer, 145 Tex. 586, 200 S.W.2d 813 (1947), the court said:

"In Edwards v. Morton, 92 Tex. 152, 153, 154, 46 S.W. 792, 793, where the strict letter of a statute was not followed, the court said: 'The intention of the legislature in enacting a law is the law itself, and must be enforced when ascertained, although it may not be consistent with the strict letter of the statute. Courts will not follow the letter of a statute when it leads away from the true intent and purpose of the legislature, and to conclusions inconsistent with the general purpose of the act.' A too literal construction of a statute, which would prevent the enforcement of it according to its true intent, should be avoided, Bowman v. Puckett, 144 Tex. 125, 128, 188 S.W.2d 571. In ascertaining the true intention of the legislature in the enactment of subdivision 7 of Article 1387, and the general purpose of the statute of which it is a part, we take into consideration the existing condition of the law at the time of the enactment of the statute and the general rules then established and applicable to its subject matter. McBride v. Clayton, 140 Tex. 71, 76, 77, 166 S.W.2d 125."

In Southwestern Sav. & Loan Ass'n of Houston v. Falkner, 160 Tex. 417, 331 S.W.2d 917 (1960), the court said:

"A statute should not be shorn of its effectiveness if its purpose can be achieved by a reasonable interpretation."

We interpret the words contributory negligence and negligence used in the statute to mean such contributory negligence and such negligence as was a proximate cause of the occurrence in question.

■ Appellant also contends the court erred in not granting a mistrial because the answer to question number 2 and the answers to number 7 are in irreconcilable conflict. Appellant cites Little Rock Furniture Mfg. Co. v. Dunn, 222 S.W.2d 985 (Tex. 1949) and Bradford v. Arhelger, 161 Tex. 427, 340 S.W.2d 772 (1960), in support of her contention. We consider these authorities inapplicable.

In Hodges, 1969 Supplement to Special Issue Submission in Texas, at page 126, we find the following:

"Another area in which the asserted conflict is properly treated somewhat differently is where the asserted conflict is between finding of no negligence or that the negligence was not a proximate cause of the event or the injury, and the finding that the plaintiff suffered a stated amount of damages proximately caused by the event or the negligence of the defendant. The result is consistent with that reached by the usual approach.

It is consistently held that there is no fatal conflict. The result is sometimes explained by reconciliation. Sometimes by merely stating that the damage question becomes 'immaterial' when no liability is found. In others it is said that the specific findings on the liability control the general finding of an amount of damages or that the conflict was not material to the judgment."

In Texas & Pacific Railway Company v. Van Zandt, 159 Tex. 178, 317 S.W.2d 528 (Tex.1958), the court said:

"Special Issue No. 5 is the conventional type of damages issue. Its purpose is not to establish liability. Its purpose is to fix the amount of money damages which will fairly compensate an injured party for his injuries and thus discharge the legal liability of a defendant. Whether there is any legal liability on the part of a defendant to pay the money damages must be determined, when the evidence is conflicting, through the submission of separate issues."

In Wilkinson v. Southern Farm Supply Association, 409 S.W.2d 435 (Tex.Civ.App.— Amarillo 1966, ref. n. r. e.), at page 438 the court said:

". . . Each of the issues as to damages ended as follows: 'Proximately caused by the negligence, if any, of the defendant.' It is contended that when the court inquired of the jury what sum of money would fairly and reasonably compensate the plaintiffs for certain injuries, if any, proximately caused by the negligence, if any, of the defendant and the jury answered a certain amount that would entitle plaintiff to recover damages for injuries proximately caused by the negligence of the defendants. In other words, such finding established that the defendant was negligent and such negligence was a proximate cause of the injuries regardless of the finding in answer to special issues that the defendant was not negligent."

". . . The jury found in answer to all of the special issues as to the negligence pleaded and presented to the jury that Witt was not negligent or that such negligence was not a proximate cause of the damage. The answers as to the damages as here submitted were general but the answers to the special issues as to the negligence of Witt and a proximate cause were definite and specific and the trial court had the power to apply that reasonable construction which he deemed proper and it was his duty to harmonize the findings of the jury."

We have considered all of appellant's points and find no merit in them. They are overruled.

The judgment is affirmed.