Mary Ruth MORGAN, as next friend of Edward Morgan, Jr., Johnny Morgan, and Ruthie Morgan, Minors and Mary Lou Daugherty, as next friend of Norman Daugherty, Jr., Randy Daugherty and Tommy Daugherty, Minors, Appellants,

v.

POOL COMPANY, Appellee.

No. 21003.

Court of Appeals of Texas, Dallas.

Sept. 7, 1982.

Rehearing Denied Oct. 22, 1982.

---

Phillip Godwin, Odessa, for appellants.

Michael S. Holloway, Burford & Ryburn, Dallas, for appellee.

STEPHENS, Justice.

This appeal arises from an adverse summary judgment in a suit brought on behalf of six minor children to recover exemplary damages for the deaths of their fathers, Edward Morgan and Norman Daugherty. Suit was brought under the authority of Tex.Const. art. XVI, § 26, and Tex.Rev.Civ. Stat.Ann. art. 8306, § 5 (Vernon 1967). We conclude that a fact issue exists as to the gross negligence of Pool Company, and that summary judgment was improper. Consequently, we reverse and remand.

The summary judgment evidence shows that on September 14, 1974, while in the employment of Pool Company, and while acting within the course and scope of their employment, the decedents were killed by electrocution when a rig derrick on which they were working was raised and came into contact with a high voltage electric power line. At the time of the accident, Pool Company had promulgated safety regulations for its employees. Safety regulation number 29 provided "Rig derricks will not be raised under or near electrical lines until these lines have been completely de-energized."

Appellants contend that the deposition evidence establishes a continued violation of safety regulation number 29 which raises an issue of fact as to whether such continued violation constitutes gross negligence. The current definition of gross negligence is found in *Burk Royalty Company v. Walls,* 616 S.W.2d 911 (Tex.1981). In *Burk,* the supreme court reaffirmed the definition set out in *Missouri Pacific Ry. v. Shuford,* 72 Tex. 165, 171, 10 S.W. 408, 411 (1888):

Gross negligence, to be the ground for exemplary damages, should be that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it. *Burk Royalty Company v. Walls, supra,* at 920.

In reviewing the summary judgment evidence, we must accept as true all evidence tending to support the non-movant's contentions, and must resolve in his favor all conflicts in the evidence, giving him the benefits of all intendments reasonably deducible in his behalf. *Kolb v. Texas Employers' Insurance Association,* 585 S.W.2d 870, 873 (Tex.Civ.App.—Texarkana 1979, writ ref'd n.r.e.). *See also Wilcox v. St. Mary's University of San Antonio, Inc.,* 531 S.W.2d 589, 593 (Tex.1975). We recognize further that the non-movant is not required to establish his right to prevail. *DeCluitt v. DeCluitt;* 613 S.W.2d 777, 780 (Tex.Civ.App.—Waco 1981, writ dism'd). Summary judgment procedure should be used only to eliminate from the legal process those claims which are patently unmeritorious and undisputed. *Kolb v. Texas Employers' Association, supra.*

In accordance with these guidelines, we review the summary judgment evidence. Melvin Wayne Harper testified by deposition that at the time of the accident, he was employed by Pool Company as District Manager in charge of operations. He stated that the decedents took their orders from him, and from Bobby Blundell, the field supervisor. Harper testified that it was his duty to make sure that operations were conducted under safe conditions in accordance with the Pool Company Safety Handbook. Although he was not present at the scene when the accident occurred, he knew that the derrick came into contact with high voltage lines which resulted in the electrocution of the decedents. He testified further that he had been in charge of

operations for approximately two years prior to the accident, but had never made a request for de-energization of high voltage lines and was not familiar with any occasion on which such a request had been made by anyone in a supervisory capacity. The prohibition contained in safety regulation number 29 was "just common knowledge" to Pool's employees, according to Harper. Yet he also stated that he was "almost sure" that the employees had been instructed concerning the rule prior to the accident.

Frank Pool, managing director of Pool Company, testified by deposition that safety regulation number 29 was violated on the date of the accident. He admitted that the United States Department of Labor, Occupational Safety and Health Administration Division, subsequently conducted an investigation of the accident and imposed a fine on Pool Company.

Bobby Blundell, field supervisor of the Denver City area at the time of the accident, gave deposition testimony that he had never requested de-energization of a line and did not know of anyone who had made such a request. The following excerpts of Blundell's deposition are relevant to appellants' contention that safety regulation number 29 was continually violated:

Q. All right, What I'm—what I'm asking you is, do you know whether any crew like Norman Daugherty's crew, that did well servicing work—do you know whether prior to September 14th, 1974, they ever did any work, either that crew or any other crew, that did that kind of work for Pool whether or not they ever moved a pulling unit in and had occasion to raise a derrick near or under any high voltage electric lines?

A. They work awful close to it all the time.

Q. All right. That's what I am talking about.

A. Okay.

Q. On those occasions that you are familiar with prior to September 14th, 1974, you don't have any knowledge of any of those electric lines ever being de-energized before the work started?

A. No, sir.

Q. In other words, it was the customary practice not to request any electric company to cut off the power or de-energize the lines before this work began?

A. That's right.

Q. Okay. And that was the custom even though the work to your knowledge was done all the time near these lines?

A. Oh, yeah.

Q. Right.

A. Most of the lines are underground.

Q. I know, but I'm talking about overhead.

A. Overhead, uh-huh.

Q. And that was a customary practice even with the overhead, right?

A. Right. The crew chief and the crew members would normally scan the area and then if they saw something that would create a problem, then they would call in and we could take action then. But it had never come up.

\* \* \* \* \* \*

Q. At any rate, you say you are always near these lines?

A. Yes.

Q. With high voltage in them?

A. Yes.

Q. And you know there was a number of times when crews, like Norman Daugherty's crew, went out and did well servicing work on certain wells that were near these lines where the rig had to be raised near the lines, right?

A. I would say every one of them in the Denver City area is near.

Blundell's deposition contains conflicting statements. Although he testified that a problem "had never come up," he testified also that work was done "awful close" to the electrical lines "all the time." These conflicts must be resolved in appellants' favor, and the evidence accepted as true that Pool Company allowed derricks to be raised near electrical lines without requiring de-energization. See *Kolb v. Texas Employers' Insurance Association, supra.* The prohibition of safety regulation number 29

took effect when rig derricks were under or *near* electrical lines. The deposition testimony of Bobby Blundell establishes that rig derricks were raised *near* electrical lines in the Denver City area "all the time." Neither Harper nor Blundell was aware of any instance in which electrical lines had been de-energized. Consequently, the deposition testimony established that safety regulation number 29 was continually violated. This fact is material to the question whether Pool Company's failure to enforce the regulation as written "was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it." *Burk Royalty Company v. Walls, supra* at 920.

A corporation has the non-delegable duty to provide rules and regulations for the safety of its employees, to furnish safe machinery and instrumentalities, to provide a safe place to work, and to select careful and competent fellow servants. *Burk Royalty Company v. Walls, supra* at 923–924; *Ft. Worth Elevators Company v. Russell,* 123 Tex. 128, 70 S.W.2d 397, 401 (1934). Implicit within the non-delegable duty of providing safety rules and regulations is the responsibility for insuring that the rules and regulations are followed. Even though Pool Company might have had no direct knowledge of the location of the rig derrick on the date in question, it could not delegate its responsibility for insuring compliance with the safety regulations to the employees on the rig. *See Burk Royalty Company v. Walls, supra.* If a jury were to find that Pool Company permitted continual violations of its safety regulations by failing to enforce them, and if this were found to constitute gross negligence, Pool Company would not be relieved of liability simply because the decedents raised the rig into the power line.

We conclude that the summary judgment evidence raises a genuine issue of material fact as to whether Pool Company was grossly negligent. Consequently, we reverse and remand for a trial on the merits.

SPARLING, Justice, dissenting.

I cannot agree that the summary judgment proof raises a genuine issue of fact, material to gross negligence. I therefore dissent.

To prove that Pool Company was grossly negligent, appellants must establish that Pool Company lacked "... that entire want of care which would raise the belief that the act or omission complained of was the result of a *conscious indifference* to the right or welfare of the person or persons to be affected by it." (Emphasis supplied.) *Burk Royalty Company v. Walls,* 616 S.W.2d 911, 920 (Tex.1981). Further, "[t]he plaintiff must show that the defendant was consciously, i.e., knowingly, indifferent to his rights, welfare and safety. In other words, the plaintiff must show that the defendant *knew* about the peril, but his acts or omissions demonstrated that he didn't care." (Emphasis supplied.) *Burk* at 922. The question I pose is: When the uncontested summary judgment proof establishes that Pool Company was not conscious of, did not know of, and was not aware of the peril that resulted in the death of the employees, is it, then, not entitled to summary judgment relief?

A brief understanding of the Pool Company business is helpful in our analysis. The Pool Company serviced over 500 oil wells in the immediate area of the accident. Most of these wells were owned by Shell Oil Company including the one located at the site of the accident. The wells were often serviced on an irregular basis, when specific need arose, and Shell and the other oil well owners were permitted to communicate directly with the service crews to instruct them to proceed to a given oil well. Each service truck was equipped with a two-way radio, which enabled the crew to relate their location to Pool Company Management—often after the crew had "rigged up." This same radio could be used to advise management of any problems at the well site. Although the summary judgment proof is silent regarding how the three crew members were notified to go to the well site, it is undisputed that they arrived at

the site, that they failed to notify Pool Company of an overhead power line, that they raised the derrick and that they were electrocuted. Their relatives now claim Pool Company was *grossly* negligent in causing the employee's deaths, and majority agrees that there is a material fact issue pertaining thereto.

The majority, though it discusses a fine imposed by OSHA which I would hold to be immaterial, bases its holding primarily on the deposition testimony of Bobby Blundell. This testimony, excerpted by majority, was plucked from a fifty-page deposition which is otherwise replete with assertions by Blundell that most of the power lines were underground, and that he was unaware of any danger before the accident. In testimony not quoted by the majority, Blundell was asked what he meant by "near" when he previously testified that "... every one of them [power lines] in the Denver City area is near."

A: (By Blundell) What I meant by near is it's got to be close by *but its its not a dangerous close by, there's enough*

Q: Okay.

A: —*enough leeway.* I couldn't put it down into specific yards of feet or anything, but—

Q: Have you seen any of your employees raising a rig close enough to lines where it was dangerous.

A: No. (Emphasis supplied.)

A reasonable and fair interpretation of his testimony is that "near," as he meant it, was not near enough to be a danger to raised derricks. Thus, his explanation of his words leaves no discrepancy to resolve in the appellant's favor.

Further uncontested summary judgment proof establishes that Pool Company not only enacted Rule 29 as part of an employee safety program, but also employed a safety director who held periodic meetings to promote safety. It is undisputed that Pool Company was not conscious of the employees' peril, and certainly this undisputed proof of its safety program demonstrates a lack of "indifference to the right or welfare" of the employees.

Finally, I would hold that any evidence of Pool Company's "customarily" failing to de-energize overhead lines is of absolutely no value unless there is also evidence that Pool Company knew of a *need* to de-energize, followed by their failure to do so. There is not even a hint of such proof in the record.

Because the summary judgment record affirmatively establishes that the movant, Pool Company, was not conscious or aware of the dangerous condition at the site of the accident, it then becomes the burden of the non-movants, appellants, to come forward with summary judgment proof that establishes a material fact issue in dispute, or some other basis for recovery. *See City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671 (Tex.1979). Because appellants failed to meet this burden, I would hold that Pool Company was properly awarded summary judgment. I therefore disagree with the majority and would accordingly affirm.

CARVER, J., concurs in the dissent.