**THE KROGER CO., Appellant,**

v.

**Sonja KENG, Appellee.**

**No. 12–97–00267–CV.**

Court of Appeals of Texas, Tyler.

Aug. 31, 1998.

Evelyn T. Ailts, Houston, for appellant.

G. Wesley Urquhart, Kenneth A. Zimmern, Houston, for appellee.

Before RAMEY, C.J., and HOLCOMB and HADDEN, JJ.

HOLCOMB, Justice.

Appellant, The Kroger Company ("Kroger") appeals a judgment in favor of Appellee, Sonja Keng ("Keng") for $30,000 in damages. This is a workers' compensation nonsubscriber case in which the jury found that Kroger's negligence caused Keng's injury. Kroger raises two issues on appeal: 1) whether the trial court erred when it failed to submit a jury question on comparative responsibility; and 2) whether there was sufficient evidence to support the jury's verdict. We will affirm.

■ We will first address the factual sufficiency issue. Kroger alleges that the evidence is factually insufficient to support a finding that it owed Keng a duty, that it breached this duty or that Keng was even injured. When we review questions of factual sufficiency, we consider and weigh all of the evidence, both in support of and contrary to the jury verdict. The verdict must be upheld unless we conclude it is so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951); *Dyson v. Olin Corp.*, 692 S.W.2d 456, 457 (Tex.1985); *Brookshire Bros., Inc. v. Lewis*, 911 S.W.2d 791, 794 (Tex.App.—Tyler 1995, writ denied). We may not substitute our opinion for that of the jury merely because we might draw different inferences or conclusion. *Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792, 797 (1951).

■ If an employee is injured on-the-job, and the employer is a nonsubscriber, an employee must prove actionable negligence. *See J. Weingarten, Inc. v. Sandefer*, 490 S.W.2d 941, 944 (Tex.Civ.App.—Beaumont 1973, writ ref. n.r.e.). In proving actionable negligence, he is required to prove a legal duty owed, breach of that duty, and damages proximately caused by that breach. *Werner v. Colwell*, 909 S.W.2d 866, 869 (Tex.1995). Kroger acknowledges its duty, as an employer, to use ordinary care in providing its

employees a safe place to work while not making it an insurer of its employees' safety at work. *Id.*

An employer must provide rules and regulations for the safety of its employees, furnish safe machinery and instrumentalities, provide a safe place to work, and select careful and competent fellow servants. *Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 923–24 (Tex.1981). The Texas Supreme Court has instructed us that the duty to provide safe instrumentalities and/or a duty to establish and enforce particular safety measures in a particular case is necessarily fact specific. Therefore, negligence depends on the facts of each case. *Great Atlantic & Pac. Tea Co. v. Evans*, 142 Tex. 1, 175 S.W.2d 249, 251 (1943). The test may be summed up as stated as follows:

> Doubtless many orders by the master expose the servant to *some* risk of harm; but whether the master is negligent in ordering his servant to perform a task depends upon whether he ought to realize that the order exposes the servant to an *unreasonable* risk of harm. (emphasis in the original)

*Gulf, Colorado & Sante Fe Ry. Co. v. Waterhouse*, 223 S.W.2d 654, 659 (Tex.Civ.App.—Beaumont 1949, writ ref'd n.r.e.), as cited in *J. Weingarten, Inc.*, 490 S.W.2d at 945. Thus, the injury at issue must be reasonably foreseeable in the context of the work being performed.

According to the record, Keng had been working in the deli department at the Kroger store located on Airline in Houston, Texas, since September 15, 1991. Her job duties mainly included waiting on customers, making sandwiches and selling pastries. On Saturday, February 26, 1994, the store's assistant manager, Ms. Stacey Sweeney ("Sweeney"), told Keng to move some outdated pie boxes out of the deli freezer. Keng did not move the pie boxes that day. When Keng returned to work the next day, Sweeney again told Keng to move frozen pie boxes. Keng suggested waiting until the deli manager was on duty so that he could determine whether the pie boxes should be removed. She also complained to Sweeney that moving items such as the pie boxes was not normally part of her job. Sweeney again told Keng to move the boxes and Keng unsuccessfully repeated her proposal that they should wait until the deli manager was present to assist her. Sweeney insisted that Keng move the boxes and engaged the services of an older co-worker named Clarence ("Clarence") to help her. Clarence did not assist Keng in the removal of the boxes from the shelves. Instead, Keng handed the boxes to Clarence, who then placed them on a cart and rolled them into a large freezer. Clarence left to perform other duties before Keng began removing boxes from the top two shelves. Keng described how those boxes stuck out or protruded over the lip of the shelves. In order to reach them, Keng secured a ladder. She testified that the pie boxes each weighed approximately forty pounds and that she had removed approximately fifty pie boxes before the accident. Kroger, on the other hand, presented testimony that some of the pie boxes weighed as little as twenty-five pounds depending on the number of pies in a box. There was no evidence as to the weight of the boxes which fell on Keng.

Keng testified that she was on the ladder moving boxes from the top shelf next to the freezer motor when she was called to the deli counter. When she started down the ladder, three boxes fell from the top shelf and hit her on the back. The force of the boxes knocked her off the ladder and she fell, hitting her chest on the cart. Keng stated that she immediately felt pain. She reported her injury, but continued to work the rest of her shift. Keng went to the emergency room about a week later, and again on March 13th. Kroger's Risk Management became involved and made an appointment for Keng to see a physician who they routinely used, Dr. Larry Likover ("Likover"). Keng told Likover that she was in pain, but the doctor concluded that he could not find anything wrong with her and ordered her back to work. While Keng was at work on March 17th, she began shaking. Kroger's employees placed her in a wheelchair and called her mother, who took her home. Keng's mother then called an ambulance to transport Keng to the emergency room. On October 28, 1994, Kroger

sent Keng notice that she was on "unauthorized leave of absence." Kroger eventually terminated her.

Dr. John Cianca, a specialist, testified for Keng that she suffered from a sacroiliac joint hypomobility with myofacial pain. Kroger offered Dr. Likover, Dr. Anderson Kant and Dr. Ken Mathis, who all testified that they could find no objective evidence of injury. Kroger's safety manual was also introduced into evidence. The manual indicated that it was company policy that anyone using a ladder was required to keep one hand on the ladder at all times. Additionally, there was evidence that appliances were in existence which would have aided in moving heavy items off of high shelves. The store in question, however, did not have this type of appliance small enough to fit into the freezer.

The jury found that Kroger was negligent because it failed to furnish necessary appliances and/or materials to carry on the work requested of Keng in a proper condition and with reasonable safety, and it also failed to provide adequate help and/or assistance under the circumstances for the performance of required work. Our review of the record shows that there was some evidence from which the jury could have inferred that Kroger was negligent under the above standards. Keng testified that some of the pie boxes were piled three high and were partially hanging over the top shelf. Three of these boxes fell on her. Kroger argues the evidence reflected Keng herself moved the boxes which, in turn, caused the boxes to fall. We disagree. As we understand it, Keng had moved and loaded fifty boxes from the bottom shelves and was beginning to move boxes from the top shelves. She had only moved a few of the boxes from around the freezer fan motor when she was summoned to wait on a customer. There was no evidence that she had moved the actual boxes which struck her in the back. The jury could have inferred that another Kroger employee had previously improperly stacked the boxes, causing the dangerous condition. In addition, there was evidence that not all of the boxes were full of pies. The jury could have concluded that when these boxes were placed near the front of the shelf, it was a foresee-

able danger that they would fall if slightly disturbed.

Keng stated that moving pie boxes was not part of her normal duties. The jury could have found negligence in Sweeney's order to do this particular work knowing that Keng was untrained· in that area. The jury could also have found negligence in Kroger's failure to adequately inspect the condition of the boxes and/or adequately explain how they could be removed in a safe manner or by failing to ensure that adequate assistance was available. The jury could have determined that Kroger did not furnish adequate lifting equipment and appliances to carry out the task of removing heavy boxes from the top shelf. Although Clarence was initially assigned to help Keng, there was evidence that he was not instructed in the proper manner to assist her. Implicit with safety instructions is the responsibility to see that they are followed. *Morgan v. Pool*, 641 S.W.2d 370, 373 (Tex.App.—Dallas 1982, writ ref'd n.r.e.). A combination of the above factors could reasonably have been viewed by the jury as negligence on the part of Kroger.

Keng could not reach the boxes on the top shelf without a ladder. Kroger's own safety manual required that while using a ladder, an employee must keep one hand on it at all times. Keng argues this indicates a foreseeability of an injury by not following this procedure. We do not agree, however. While it is foreseeable for an injury to occur when it was *impossible* to hold on to the ladder while removing forty pound boxes from a high shelf, Keng offered no evidence that the accident occurred by the use of the ladder.

Kroger has cited three cases it claims are on point, determinative, and dispositive of its various arguments: 1) lack of foreseeability of the injury; 2) Keng caused the boxes to fall by placing and positioning them; 3) Keng was performing a typical and usual task of any grocery store employee, e.g. moving stock from grocery store shelves; and 4) the ladder itself played no part in producing the injury thus, the violation of the safety rules was not determinative. It cites *Werner v. Colwell*, 909 S.W.2d 866 (Tex.1995), *Great Atlantic & Pac. Tea Co. v. Evans*, 142 Tex. 1,

175 S.W.2d 249 (1943), and *McClish v. R.C. Young Feed & Seed Co.*, 225 S.W.2d 910 (Tex.Civ.App.—Amarillo 1949, writ ref'd) for its proposition that it should not be held liable for Keng's injuries.

In *Great Atlantic & Pac. Tea Co.*, a grocery store employee sued his employer for negligence to recover for a hernia injury allegedly received when he lifted a one-hundred pound sack of potatoes. *Great Atlantic & Pac. Tea Co.*, 175 S.W.2d at 250. The employee claimed that the grocery store failed to provide a co-worker or a mechanical device to assist him in hauling the sacks. Evidence was presented that the plaintiff was employed as a stock boy/assistant manager who had hauled similar sacks of potatoes for several months without incident. Evidence was also presented that his job duties of handling sacks of potatoes were usual and normal and undistinguishable from the potato hauling practices of other grocery stores. *Id.* The Texas Supreme Court held that, as a matter of law, these facts failed to establish actionable negligence and failed to establish any reasonable foreseeability of harm. Secondly, Kroger points out that the Texas Supreme Court expressly reaffirmed *Great Atlantic & Pac. Tea Co.* in *Werner*, 909 S.W.2d at 869. *Werner* makes it clear, however, that even performing regular duties may be actionable if the job itself is unusual or poses a threat of injury. *Id.*

In *McClish*, the plaintiff worked as a laborer at a feed store. *McClish*, 225 S.W.2d at 911. Approximately one month after he was hired, McClish was removing one hundred pound sacks of feed from a warehouse. He would take the sacks from three stacks of feed and place them on a small handtruck. Another employee operating the handtruck would then move the sacks to a door where the sacks would then be loaded onto a truck. After removing the sacks from the first two stacks, the third stack collapsed and some sacks fell on McClish's back. *Id.* Because his employer was a nonsubscriber to workers' compensation, he sued his employer under common law. At trial, the plaintiff offered no direct proof that the feed sacks were not properly stacked. *Id.* at 912. Instead, the plaintiff offered his own testimony based upon his many years of experience in the feed business that if the feed was properly stacked, it would not fall. The trial court granted an instructed verdict and the plaintiff appealed. *Id.* The Amarillo Court of Appeals affirmed the instructed verdict in favor of the employer based on legally insufficient evidence. *Id.* at 914. The court properly refused to infer negligence from the mere fact that an accident happened or an injury occurred. The court in affirming the judgment in favor of the employer, found no evidentiary basis to impute liability to the employer, since it was unknown why the sacks fell. *Id.*

Kroger asserts that these cases show Keng cannot prove actionable negligence because she was injured doing something she routinely does. We do not agree. There was evidence that moving supplies out of the freezer was not normally part of Keng's job. Keng had been working at Kroger in the deli department since September 15, 1991. Before Sweeney's request on February 26, 1994, no one at Kroger had ever asked Keng to move frozen food supplies of this weight or under these conditions. In the instant case, there is evidence that Keng was not doing the same character of work that she had always done. Thus, this case is distinguishable from *Werner*, *Great Atlantic & Pac. Tea Co.*, and *McClish*.

■ Where there is reason to anticipate from the work to be performed and the manner of performance that injury may result to an employee, it is incumbent on the employer to exercise ordinary care to prevent injury. *Collins v. Pecos & N.T. Ry. Co.*, 110 Tex. 577, 212 S.W. 477, 478 (1919); *Woodlawn Manufacturing, Inc. v. Robinson*, 937 S.W.2d 544, 548 (Tex.App.—Texarkana 1996, writ denied). Keng's injury was foreseeable. Foreseeability requires only that the general danger, not the exact sequence of events producing the harm, be foreseeable. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996). There is evidence that Keng had never been instructed on how to move frozen supplies. And even Kroger's manager testified that the safest way to remove boxes from the top shelf while using a ladder is to have assistance in doing so. Furthermore,

there is evidence that the pie boxes hanging over the shelf posed a foreseeable risk of danger.

■ Kroger claims the record establishes insufficient evidence that it's conduct proximately caused the damages awarded. We do not agree. Kroger offered only the testimony of Dr. Ken Mathis. Kroger's Risk Management Department sent Keng to Mathis. Mathis generated medical reports paid for by Kroger. On the other hand, Dr. John Christopher Cianca, a licensed physician at Baylor Hospital, testified for Keng. Cianca diagnosed Keng as suffering from mechanical back pain, which may start as a muscular problem and then later deteriorate as time passes. Cianca added that based upon reasonable medical probability, the injuries he diagnosed were caused by the fall or by the boxes striking Keng in the deli freezer at Kroger. Cianca also testified that the accident caused Keng to suffer a sacroiliac joint disfunction with myofacial pain. Cianca further testified that Keng's reported injuries were not faked for "secondary gain." He explained that Keng had a positive "Patrick's test," which is inconsistent with faking and consistent with a sacroiliac joint problem. Her symptoms, Cianca continued, were congruent with his objective findings. We have reviewed the medical records of Dr. Blum, Dr. Swick, Harris County Hospital District, HCA Spring Branch, Dr. Hill, Dr. Kant, Martin Luther King Clinic, and Dr. Cianca, and find the evidence factually sufficient.

Kroger has set forth several ways in which Keng could have caused or avoided the harm that produced her injury. We must view this argument and evidence, however, with the knowledge that they may relate to contributory negligence, the fellow servant doctrine, and/or assumption of the risk defenses statutorily denied Kroger because of its nonsubscriber status. TEX.LAB.CODE ANN. § 406.033(a),(d) (Vernon 1997); *W.E. Grace Mfg. Co. v. Arp*, 311 S.W.2d 278, 282 (Tex. Civ.App.—Dallas 1958, writ ref'd n.r.e.). Kroger's assertions may undermine the sufficiency of the evidence to support the jury's verdict and may also attack Keng's credibility. We agree there was admittedly contradictory evidence regarding whether Kroger provided a safe work environment. But when reviewing the sufficiency of the evidence, we cannot consider possible negligence on Keng's part in determining who or what caused the accident to occur.

■ When there is conflicting evidence, the jury's decision is generally conclusive. *Chemical Express Carriers, Inc. v. Pina*, 819 S.W.2d 585, 590 (Tex.App.—El Paso 1991, writ denied). As the trier of fact, the jury is the sole judge of the credibility of witnesses and the weight attached to their testimony. *Mid–South Bottling Co. v. Cigainero*, 799 S.W.2d 385, 389 (Tex.App.—Texarkana 1990, writ denied). The jury may also draw inferences from the facts and choose between conflicting inferences. *Ramo, Inc. v. English*, 500 S.W.2d 461, 467 (Tex.1973). We conclude that conflicting evidence exists in this case. We are not the fact finder, however, and we cannot substitute our judgment for that of the jury. We do not find that the verdict was so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. We overrule Kroger's second issue.

■ On the first issue presented by Kroger on appeal, it claims that the trial court erred in refusing to submit a comparative responsibility issue to the jury, citing *Texas Workers' Compensation Commission v. Garcia*, 893 S.W.2d 504, 521 (Tex.1995) in support of its proposition. Kroger argues that as a nonsubscriber, this case is not a "workers' compensation case," and they were entitled to benefit from the comparative negligence statutes, thereby limiting any recovery by Keng to the percentage of total damages for which Kroger was responsible. Kroger points out the original Workmen's Compensation Act passed in 1913 provided:

Section 1. In an action to recover damages for personal injuries sustained by an employee in the course of his employment ... it shall not be a defense:

1. That the employee was guilty of contributory negligence; but in such event the damages shall be diminished in the proportion to the amount of negligence attributed to such employee.

Act of April 16, 1913, ch. 179, 1913 Tex.Gen. Laws (repealed 1989). Thus, the original statute, while contributory negligence would not bar a claim, it would reduce a damage award in proportion to the contributory negligence of the Plaintiff. *See Memphis Cotton Oil Co. v. Tolbert*, 171 S.W. 309, 314 (Tex.Civ. App.—Amarillo 1914, writ dism'd).

In 1917, the Texas Legislature amended the Workers' Compensation Act deleting the assessment of proportionate responsibility to determine damages. *See* Act of March 28, 1917, ch. 103, § 1, P. 270, Tex.Gen.Laws 1917. Under this amendment, common law contributory negligence would no longer be a defense. Instead, the statute read that in an action to recover personal injuries, it was not a defense that "the employee was guilty of contributory negligence." *See Id.* This would remain the law for 76 years in Texas under the old Act, and as established below, now under the new Act. *See* TEX.REV.CIV.STAT. ANN. art. 8306, § 1 (repealed by ACTS 1989, 71st Leg., 2d C.S., ch. 1, § 3.03); *see also Evans v. Phipps*, 152 Tex. 487, 259 S.W.2d 723, 724 (Tex.1953); *Potter v. Garner*, 407 S.W.2d 537, 538 (Tex.Civ.App.—Tyler 1966, writ ref'd n.r.e.).

The Texas Legislature revamped the Workers' Compensation Act, which became effective January 1, 1993. The bar to raising the common law contributory negligence defense was retained under the "new" Act. The statute in effect today and at the time of Keng's alleged injuries provides:

Common-law defenses:

(a) In an action against an employer who does not have workers' compensation insurance coverage to recover damages for personal injuries ... it is not a defense that:

(1) the employee was guilty of contributory negligence.

TEX.LAB.CODE ANN. § 406.033(a) (Vernon 1996). Kroger argues that, as the predecessor statutes before it, the new Act, by its express language, incorporates the now eighty-year-old rule ensuring that an employee's *common law* contributory negligence does not act to totally bar his or her claim against a nonsubscribing employer. It also opines that the Legislature, since 1917, has

likewise been clear that this section which deprives an employer of common law defenses is, in fact, *limited* to common law defenses. By separate section, the Act states: "Notwithstanding Section 406.033, the cause of action is subject to all defenses available under the common law and the statutes of this state." TEX.LAB.CODE ANN. 5406.034(d) (Vernon 1996); *see also* ACTS 1917, 35th Leg., p. 269, ch. 103, part 1, § 3a (Vernon 1967). The question before us is the import of the intervening legislative amendments which adopted a comparative *statutory* negligence scheme, and whether the statutory, not common law, defense of comparative negligence is available to a nonsubscriber in a personal injury case.

In 1973, the Texas Legislature enacted a statutory framework of comparative negligence. *See* TEX.REV.CIV.STAT.ANN. art. 2212a (repealed 1985). With this statute, the Texas Legislature abolished contributory negligence as an absolute bar to the plaintiff's recovery in negligence causes of action and substituted a doctrine of statutory comparative negligence. Article 2212a provided:

(a) In an action to recover damages for negligence resulting in death or injury to a person or property, contributory negligence does not bar recovery if the contributory negligence is not greater than the negligence of the person or persons against whom recovery is sought.

TEX.REV.CIV.STAT.ANN. art. 2212a (repealed 1985). The Legislature, with this comparative negligence scheme, alleviated the long-standing and harsh common law rule wherein any negligence of a plaintiff would act to bar his or her recovery. *See Farley v. M M Cattle Co.*, 529 S.W.2d 751, 758 (Tex.1975). In 1987, the Texas Legislature modified the comparative negligence scheme and replaced it with a comparative responsibility. The statute entitled "Comparative Responsibility" provided, in pertinent part:

(a) In an action to recover damages for negligence resulting in personal injury, property damage, or death ... a claimant may recover damages only if his

percentage of responsibility is less than or equal to 50 percent.

See TEX.CIV.PRAC. & REM.CODE ANN. § 33.001 (Vernon Supp.1988) *amended by* ACTS 1995, 74th Leg., ch. 136, § 1.[1] In 1995, the Texas Legislature amended the comparative responsibility scheme enacting what is currently the law in Texas, proportionate responsibility. *See* TEX.CIV.PRAC. & REM.CODE § 33.001 (Vernon 1997). The statute now provides, "In an action to which this chapter applies, a claimant may not recover damages if his percentage of responsibility is greater than 50 percent." *Id.*

Kroger requests that this Court hold that the Texas Legislature revived the defense of contributory negligence for nonsubscribers when the comparative responsibility statute was passed in 1973. To do this, we would be required to determine if there exists a conflict between section 33.001 of the Civil Practice and Remedies Code, and section 406.003(a) of the Texas Labor Code.

When construing a statute, courts use the ordinary meaning of terms unless the Legislature has provided a definition. TEX. GOV'T CODE ANN. § 311.011 (Vernon 1988) (Texas Code Construction Act); *Hopkins v. Spring I.S.D.*, 736 S.W.2d 617, 619 (Tex.1987). The ultimate goal in any statutory construction is to give effect to the intent of the Legislature to the greatest degree possible. TEX. GOV'T CODE ANN. §§ 311.021, 311.023 (Vernon 1988).

■■■ We begin with the premise that the Texas Workers' Compensation Act is to be construed liberally in favor of injured workmen and it is improper to supply by implication restrictions on employee's rights which are not found in the language of the statute. *Miears v. Industrial Acc. Bd.*, 149 Tex. 270, 232 S.W.2d 671, 675 (1950). Strained or narrow construction of the workers' compensation law that deny the employee benefits are improper. *See Pacific In-*

*demnity Co. v. Woodall*, 253 S.W.2d 490, 492 (Tex.Civ.App.—Fort Worth 1952, writ ref'd). Courts should avoid construing the Texas Workers' Compensation Act, *or any part thereof*, in a manner which results in absurd consequences. *Gonzalez v. CIGNA Ins. Co. of Tex.*, 924 S.W.2d 183, 186 (Tex.App.—San Antonio 1996, writ denied) (emphasis added).

Section 406.033 of the Texas Labor Code provides, in pertinent part:

(a) In an action against an employer who does not have workers' compensation insurance coverage to recover damages for personal injuries or death sustained by an employee in the course and scope of the employment, it is not a defense that:

(1) the employee was guilty of contributory negligence;.

(2) the employee assumed the risk of injury or death; or

(3) the injury or death was caused by the negligence of a fellow employee.

(b) This section does not reinstate or otherwise effect the availability of defenses at common law, including the defenses described in Subsection (a).

\* \* \*

(d) In an action described in Subsection (a) against an employer who does not have workers' compensation insurance coverage, the plaintiff must prove negligence of the employer or of an agent or servant of the employer acting within the general scope of the agent's or servant's employment.

TEX.LAB.CODE ANN. § 406.033 (Vernon Supp. 1994). Kroger not only argues that the Legislature nullified section 406.033(a),[2] but that it did so in 1973. It further contends that the instant case is not an action to collect workers' compensation under the statute and

---

1. Because Keng's alleged injury occurred on February 27, 1994, the applicable statute is the comparative responsibility scheme.

2. Since Sonja Keng filed her petition against Kroger in January 1995, the comparative responsibility statute in effect at that time directed the reader to TEX.REV.CIV.STAT.ANN. art. 8306, *et seq* .

However, by January 1995, article 8306, *et seq.*, had already been repealed and recodified as TEX. LAB.CODE ANN. §§ 401.001 *et seq.* Regardless of whether this Court uses the 1987 comparative responsibility statute or the 1995 amendment, Appellee Keng's arguments apply equally to either statute.

that, consequently, Chapter 33 of the Texas Civil Practices & Remedies Code applies to Keng's case. TEX.CIV.PRAC. & REM.CODE ANN. § 33.002(c)(1) (Vernon 1997) reads: "(c) this chapter does not apply to: (1) an action to collect workers' compensation benefits under the workers' compensation laws of this state. (Subtitle A, Title 5, Labor Code)." Section 406.033, entitled "Common Law Defenses: Burden of Proof", however, is *part* of Subtitle A, Title 5, of the Texas Labor Code.

■ The phrase "workers' compensation benefits" is not expressly defined in the comparative responsibility statute. The Workers' Compensation Act, however, does define "benefit" as a medical benefit, an income benefit, a death benefit, or a burial benefit based on a compensable injury. TEX.LAB. CODE ANN. § 401.011(5) (Vernon's 1996). We conclude that when an employee files suit against a nonsubscribing employer, that suit is "an action to collect benefits [and damages] under the workers' compensation laws of Texas." Specifically, it is an action under section 406.033. There are two principle reasons for this interpretation. First, the employee has a *statutory* burden to prove the negligence of the employer. TEX.LAB.CODE ANN. § 406.033(d). Thus, where the employee is the sole cause of injury, the employee cannot recover pursuant to statute, even though the defense of contributory negligence is unavailable to the employer. *Najera v. Great Atlantic & Pacific Tea Co.*, 146 Tex. 367, 207 S.W.2d 365, 367 (1948). Consequently, an employee's negligence action against his nonsubscribing employer is brought "under the workers' compensation laws of Texas," not only common law. It is therefore subject to the exemption language of Section 33.002(c)(1) of the Texas Civil Practice and Remedies Code. Secondly, the employee is statutorily empowered to prosecute an action for personal injuries free of common law defenses against an employer who is eligible to subscribe under workers' compensation law, but chooses not to subscribe. *See* TEX.LAB.CODE ANN. § 406.033(a). It is not true that a negligence action against a nonsubscribing employer is governed solely by common law. It is "by the terms of [Texas Workers' Compensation] law" that an employer is deprived of the defenses of con-

tributory negligence, assumed risk, and fellow servant negligence. *Western Union Telegraph Co. v. Coker,* 146 Tex. 190, 204 S.W.2d 977, 978 (1947). In short, all employers are governed by the Texas Workers' Compensation Act, whether they subscribe or not. *See* TEX.LAB.CODE ANN. § 406.004.

■ Section 406.033 of the Labor Code was intended to impose a penalty on any employer who elected not to carry workers' compensation insurance. *See* Gary Thornton, *Litigation Involving Non–Subscribers to Workers' Compensation Insurance,* 54 Tex. B.J. 31 (1991). Contributory negligence, assumed risk, and fellow servant defenses are *statutorily* abolished. TEX.LAB.CODE ANN. § 406.033(a) (Vernon 1996). Thus, the express intent of the Legislature was to deprive a non-subscribing employer of these defenses in a workers' compensation case. As the Texas Supreme Court has stated,

> Although employers are allowed to opt out of the [workers' compensation] system, [that is, not subscribe, the Texas Workers' Compensation] Act *discouraged* this choice by abolishing all the traditional common law defenses for non-subscribers.

*Garcia,* 893 S.W.2d at 511 (emphasis added).

■ Furthermore, the Texas Legislature in amending the Workers' Compensation Act in 1989, had the opportunity to remove the penalty provisions of section 406.033, but left them intact. To interpret the comparative responsibility statute of 1973 as an attempt by the Texas Legislature to indirectly repeal or limit the penalty provisions of the Workers' Compensation Act, as Kroger so posits, would be to ignore the language of both statutes. Kroger's interpretation removes the incentive for employers to subscribe to the Workers' Compensation Act.

There is very little caselaw on this issue. However, in *Woodlawn,* the Texarkana court reaffirmed the view that an employer is prohibited from asserting common law defenses of contributory negligence, assumption of risk, and fellow servant negligence in an employee's action for injuries sustained on the job where the employer was not a subscriber under workers' compensation law. *Woodlawn,* 937 S.W.2d at 547–48. The

*Woodlawn* court held that these defenses were statutorily denied to the employer. *Id.* at 549. Although comparative responsibility was in effect at the time this case was decided, the court did not submit a jury issue on comparative responsibility. And in *Torres v. Caterpillar*, 928 S.W.2d 233 (Tex.App.—San Antonio 1996, writ denied), the San Antonio court addressed the inapplicability of the comparative responsibility statute to a nonsubscriber case under the Workers' Compensation Act. The court stated:

> Since [the Defendant] was a non-subscribing employer, contributory negligence was not a defense, and, therefore, the trial court properly disregarded the *percentage causation* the jury attributed to [the employee's] negligence in awarding damages [against the employer].

*Id.* at 237 n. 3 (emphasis added).

Kroger reasons that there is legislative authority for a comparative negligence question in the jury charge, even though "common law" contributory negligence is barred as a defense under the Labor Code. But in order for the comparative responsibility statute to apply to *any* case, the defendant must offer evidence and establish that the plaintiffs negligence proximately caused the plaintiffs injuries. *Howard v. Bachman*, 524 S.W.2d 414, 416 (Tex.Civ.App.—Eastland 1975, no writ). In *Bachman*, the court of appeals held that the plaintiffs negligence must have been a proximate cause of the accident in question in order to apply the comparative statute. *Id.* In a case such as the one before us, however, the defendant cannot prove contributory negligence as a matter of law. *See* TEX.LAB.CODE § 406.033(a). So a comparative responsibility issue submitted in a jury charge would always yield an immaterial finding since, as a matter of law, the plaintiff cannot be found contributorily negligent. Further, this explains the exception expressly carved out for workers' compensation cases in the comparative statute. Section 406.033(a) of the Labor Code renders immaterial any comparative finding against the plaintiff in a nonsubscriber case because there can be no contributory negligence to serve as a predicate for the comparative question.

We further conclude that an attempt to apply the comparative statute also offends the statutory bar against the common law defense of assumption of risk. Conspicuously, the Texas Legislature retained the "assumption of risk" terminology in the 1995 amendment to the Texas Labor Code, even though the doctrine of "assumption of risk" was abandoned by the Texas Supreme Court in 1975. *See Farley*, 529 S.W.2d at 758. Like the defense of contributory negligence, the defense of "assumed risk" was *absorbed* by the law of comparative fault. The fact finder now determines the reasonableness of an actor's conduct in confronting risk by using comparative responsibility principles. *Newman v. Tropical Visions, Inc.*, 891 S.W.2d 713, 717–18 (Tex.App.—San Antonio 1994, writ denied). Consequently, interpretation of the comparative responsibility statute which would apply it to a nonsubscriber case would permit employers to put on evidence of the "reasonableness of the actor's conduct in confronting risks on the job." Such evidence is not admissible under section 406.033(a)(2) of the Labor Code.

We next respond to Kroger's assertion that *Garcia* stands for the proposition that a fifty percent bar rule applies to employees who bring a negligence action against a nonsubscribing employer. We disagree. In *Garcia*, the Texas Supreme Court addressed the issue of whether the "new" Texas Workers' Compensation Act facially violated the Texas Constitution's guarantees of open courts, due course of law, equal protection, jury trial, and obligation of contract. *Garcia*, 893 S.W.2d at 510. The Texas Supreme Court reversed the judgment of the Court of Appeals and upheld the constitutionality of the new Act, sections 401.001, *et seq.* of the Labor Code.

In considering the plaintiffs open courts challenge, the Texas Supreme Court compared the current statute to the common law remedy *without* regard to the previous statute. *Id.* at 521. Because the open courts provision in the Texas Constitution guarantees that a common law remedy will not be unreasonably abridged, the Court necessarily compared the new Texas Workers' Compensation Act with remedies available under

common law. *Id.* To make such a comparison, the court first discussed an employee's burden under the common law *as if the Texas Workers' Compensation Act was not in effect.* In keeping with the proper analysis of an open courts challenge to any statute, the court appropriately discussed an injured worker's burden in a negligence action against his employer without the protection of Tex.Lab.Code § 406.033. Logically, common law defenses would be available to an employer if there were no Act in place. So, the *Garcia* court entertained a hypothetical scenario for the sole purpose of performing an open courts challenge analysis. The Court was not setting forth new policy regarding the interpretation of the Texas Workers' Compensation Act. This conclusion is borne out by the remarks of the Court:

> To recover damages at common law, an injured worker was required not only to establish that the employer's negligence proximately caused the injury, but also to avoid the defenses of contributory negligence, assumption of risk, and fellow servant.

*Garcia*, 893 S.W.2d at 521. Obviously, an injured worker does not need to avoid the defenses of contributory negligence, assumption of risk, or fellow servant under Tex.Lab. Code § 406.033. We conclude, therefore, that the *Garcia* court was merely entertaining a fiction, that is, considering remedies available to an injured worker under the common law without regard to the Texas Workers' Compensation Act.

Even if our evaluation of *Garcia* is incorrect, however, we still disagree that the court's holding is determinative of the issue before us. The language was not essential to the outcome of the case, nor did comparative negligence constitute even a minor issue in that case. The brief statement that an employee cannot recover if he is more than 50 percent negligent was clearly dicta and non-controlling.[3]

In addition to our previous analysis, we conclude that Kroger's interpretation of the comparative responsibility statute completely ignores the legislative intent of section 406.033. We conclude that the Texas Legislature did not, in such a manner, back-door the rebirth of contributory negligence in non-subscriber cases brought under the workers' compensation statute.

The trial court in this case did not err in refusing to submit the comparative responsibility issue to the jury. Kroger's first issue is overruled.

The judgment of the trial court is *affirmed.*

---

**3.** The Amarillo Court of Appeals has "followed" *Garcia's* holding that comparative responsibility is an available defense for defendants in a non-subscriber case. *Byrd v. Central Freight Lines, Inc.*, No. 07–96–0311–CV, 1998 Tex.App. LEXIS 3895, —— S.W.2d —— (Amarillo June 30, 1998, no writ). We decline to do so for the reasons stated above.